JEFFERSON D. BERNSTEIN, Respondent, *v.* HENRY L. MEECH et al., Appellants.

Defendants entered into a contract in writing with plaintiff to furnish him a hall in the city of B. for four performances of a theatrical company, plaintiff to receive fifty per cent of the gross receipts. Plaintiff thereafter wrote to defendants inclosing a contract for them to sign, by the terms of which he was to receive sixty per cent of the gross receipts, and stated in his letter that he could not think of playing for less. Defendants returned said contract unsigned, with a letter stating that they already had a contract signed by plaintiff, and did not need any other. Defendants subsequently, having received from plaintiff's agent for publication certain advertisements, wrote said agent expressing surprise, and stating they had supposed from plaintiff's letter that the company was not coming to B., and that they could not arrange for the performances on the dates named. This letter was not received by said agent until his arrival at B. to make arrangements for said performances, to which place the letter had been forwarded. Plaintiff with his company came to B. in due time to perform his contract, but was refused the use of the hall. In an action upon the contract, the court refused to direct a verdict for defendants, but submitted to the jury the question as to whether defendants were relieved from the obligation of their contract. *Held*, no error ; that defendants' letter, in response to that of plaintiff inclosing the proposed new contract, was an election on their part to keep the executed contract in force, which operated upon the rights of both parties, and so the contract was kept alive until the time of performance.

Also *held*, that while the amount of profits plaintiff would have realized had the contract been performed, were not susceptible of proof, and so not recoverable, plaintiff was entitled to recover the amount of expenses legitimately and necessarily incurred by him for the purposes of the performance of the contract on his part; that it could not be assumed plaintiff would have lost any part of these expenditures had he been permitted to perform.

*Windmuller* v. *Pope* (107 N. Y. 674), distinguished.

(Argued December 1, 1891; decided December 22, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 1, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This was an action to recover damages for a breach of contract.

The facts are sufficiently stated in the opinion.

*Leroy Andrus* and *John T. Joyce* for appellants. The plaintiff's letter of August twelfth was a positive refusal on his part to perform the contract, and in view of that refusal the defendants not only had the right, but it was their duty to take such steps as were necessary to find other employment for their Academy of Music on the dates named and thus avoid loss. (*Hough* v. *Brown*, 19 N. Y. 111; *Rinz* v. *Renauld*, 100 id. 256; *Windmuller* v. *Pope*, 107 id. 674; *Hochster* v. *De La Tour*, 2 El. & Bl. 678; *Daniels* v. *Newton*, 114 Mass. 530; *Nason* v. *Holt*, 114 id. 541.) Plaintiff was not entitled to recover as damages the expenses incurred by him in paying salaries of his company, or for printing, hotel bills, or any of the items proved by him. (*Schonberg* v. *Cheney*, 3 Hun, 677; *Wakeman* v. *W. & W. M. Co.*, 101 N. Y. 205; *Taylor* v. *Bradley*, 4 Abb. Ct. App. Dec. 363; *Dart* v. *Laimbier*, 107 N. Y. 664; *McDowell* v. *Oyer*, 21 Penn. St. 417; Sedg. on Dam. 27, 30, 225; *Alder* v. *Kingsley*, 15 M. & W. 117.) The court erred in charging the jury that plaintiff was entitled to recover a reasonable hotel bill, although not the one actually incurred by him.

*Herbert P. Bissell* for respondent. The existence of the contract and its breach by the defendants were clearly established by the evidence. (*Butler* v. *Murray*, 30 N. Y. 88; *Nichols* v. *S. A. R. R. Co.*, 38 id. 131; *Heyne* v. *Blair*, 62 id. 19.) The rule adopted on the trial was the proper rule of damages to be applied to this case, under all the circumstances. (1 Suth. on Dam. 110; *Griffin* v. *Culver*, 16 N. Y. 489; *Allen* v. *McConihe*, 124 id. 347; *Driggs* v. *Dwight*, 17 Wend. 71;

*Vanderslice* v. *Newton,* 4 N. Y. 133 ; *Wakeman* v. *W. & W. M. Co.,* 101 id. 209 ; *White* v. *Miller,* 71 id. 133 ; *Satchwell* v. *Williams,* 40 Conn. 371 ; *Freeman* v. *Clute,* 3 Barb. 427 ; *McKinnon* v. *McEwan,* 42 Am. Rep. 450, and note 461 ; *H. & T. R. Co.* v. *Hill,* 51 id. 642 ; *Brigham* v. *Carlisle,* 56 id. 28 ; *Blanchard* v. *Ely,* 21 Wend. 342 ; *Savery* v. *Ingersoll,* 46 Hun, 176 ; *Walsh* v. *W. Ins. Co.,* 32 N. Y. 440 ; *Jones* v. *Osgood,* 6 id. 223 ; *Langly* v. *Wadsworth,* 99 id. 61 ; *Schile* v. *Brokhaus,* 80 id. 614.)

BRADLEY, J. By contract of date August 4, 1887, between the parties, the defendants agreed to furnish to the plaintiff the opera house known as the Academy of Music, in the city of Buffalo, December twenty-second, twenty-third and twenty-fourth, for four performances by the Jarbeau Comedy Company, and for that purpose the plaintiff agreed to furnish the services of that company during that time, and to take as the consideration fifty per cent of the gross receipts of all sums realized from the performances. When this contract was executed, each of the parties had the right to assume that the other would observe its stipulations. The performances did not take place, and the reason why they did not, the plaintiff charges, was attributable to the breach of the contract by the defendants. The purpose of this action was to recover damages as the consequence. The controversy involved the construction of correspondence had between the parties subsequently to the making of the contract. The first of it was a letter from the plaintiff to the defendants of August 12, 1887, in which he inclosed a written paper for them to sign as a contract to the effect that he should have sixty per cent of the gross receipts of the performances, and he stated in the letter that he could not think of playing for less. When the defendants received this letter, it may be they were permitted to understand that the plaintiff did not intend to have his company play for the stipulated portion of the receipts first mentioned, and to treat the contract as rescinded or as still in force for such purpose only as to them might be deemed available. The view

which was taken by the defendants of the situation was repre-
sented by their letter of date August thirteenth to the plain-
tiff, in which they returned the contract unsigned, and said
they did so " for the reason that we have a contract signed by
you and do not need any other for the appearance of Vernona
Jarbeau and company at our Academy of Music, December
22, 23, and 24, 1887." By this letter, it seems that the defend-
ants did not intend to and did not relinquish any rights which
they had under the contract of the fourth of August. That
agreement then remained in force, and if the plaintiff failed
to perform it he would be liable to the defendants for the
legitimate consequences of his default. No further communi-
cation was had between the parties until November seven-
teenth, when the plaintiff's agent in his letter from Chicago to
the defendants inclosed advertising clippings to them for pub-
lication, and added : " Please keep Miss Jarbeau before the
public as much as possible. I want to see her turn them away
in your town, and she will if conditions are equal. If you
had rather, I will address the newspapers myself." In that
case he requested that the names of newspaper men to address
be furnished him. The defendant, who was absent when the
letter reached Buffalo, addressed to the agent at Chicago,
November twenth-eighth, a letter expressing his surprise, with
the remark that he had supposed from the plaintiff's letter of
the twelfth of August, that his company was not coming to
Buffalo, and added : " We cannot now arrange to play Vernona
Jarbeau " the dates before mentioned. This letter was for-
warded to Buffalo and did not reach the agent until December
seventeenth or eighteenth, when he came there to complete
the advertising and make the arrangements preparatory to the
performance. And in due time the plaintiff with his company
reached Buffalo to perform his contract with the defendants.
In the meantime they had arranged with James Brown Potter
Company to play at the Academy of Music on those days.
And the plaintiff was refused permission for his company to
do so. Upon this state of facts, the question was presented
whether or not the defendants were relieved from the obliga-

tion of their contract with the plaintiff. This, in view of the circumstances, was treated by the trial court as a question of fact for the jury and exception was taken to refusal to direct a verdict for the defendants.

It is urged that the plaintiff's letter to the defendants must be treated as a refusal to perform and as a breach of the contract on his part, which relieved them from its obligation, and afforded to the defendants a right of action. It is true that when one of the parties to an executory contract has renounced it, the other party to it may act upon the assumption of such a breach before the time for performance arrives. (*Wind-muller* v. *Pope*, 107 N. Y. 674.)

But in the present case that proposition is not necessarily applicable, because the conclusion was not required as matter of law that there was a renunciation of the contract by the plaintiff, nor was it so treated by the defendants. (Blackburn on Sales, § 744.) And whether in view of the understanding of the parties derivable from their correspondence the defendants could have acted upon the assumption of a breach by the plaintiff, and was justified in so doing, was a question presented for consideration at the trial, and which the defendants requested the court to submit to the jury. The refusal of the court to charge further than it had already charged on the subject was not error, because by the charge before then made to the jury the question in that respect had with ample instructions been fully submitted to them.

But whatever view may have been taken of the right of the defendants to treat the contract for the purposes of its performance as at an end and to act upon that assumption when they received the plaintiff's letter, they disposed of that question by their letter to him. By this it appeared that the defendants elected to keep the contract in force for the purposes for which it was made. This operated alike upon the rights of both parties, and the plaintiff was justified in so understanding it. In that view the contract was kept alive until the time arrived for performance, and the obligations of the defendants no less than those of the plaintiff for that pur-

pose remained effectual. (*Johnstone* v. *Milling*, L. R. [16 Q. B. D.] 460 ; *Frost* v. *Knight*, L. R. [7 Exch.] 111 ; *Zuck* v. *McClure*, 98 Penn. St. 541.)

There was no error in the refusal of the court to direct a verdict for the defendants.

The remaining questions have relation to the damages which were the subject of the plaintiff's recovery. The general rule on the subject would permit him, in case of breach by the defendants, to recover the value of his contract. And that was dependent upon the receipts to be realized from the contemplated performances by the plaintiff's company. The results which would in that respect have been produced if the company had been permitted to perform the contract were speculative, and by no probative means ascertainable. It is contended on the part of the defendants that recovery could be founded on no other basis, and therefore the plaintiff could recover nominal damages only. The value of the contract to the plaintiff was in the profits, and in the amount of them which may have been realized over his expenses attending its performance. Those profits not being susceptible of proof, were not the subject of recovery. But by the breach of the contract by the defendants, the plaintiff was denied the opportunity which the observance of it could have given him to realize fifty per centum of such receipts as would have been produced by it. His loss also consisted of the expenses by him incurred to prepare and provide for such performance. While the plaintiff was unable to prove the value in profits of his contract, he was properly permitted to recover the amount of such loss, as it appeared he had suffered by the defendants' breach. (*Griffin* v. *Colver*, 16 N. Y. 489.) The evidence warranted the conclusion that the plaintiff, through his agent, made preparations for the performance of the contract, and that the plaintiff with his troupe appeared at Buffalo, prepared and in readiness to do so. The amount of his expenses incurred for the purpose of such performance was proved, and they were the basis of the recovery. It is unnecessary to refer specifically to the items of those expenses. The jury

were, upon the evidence, permitted to find that, to the amount of the recovery, they were legitimately incurred for the purposes of the performance of the contract, and that with a view to such purpose the plaintiff suffered a loss to that extent. Those expenses may be deemed to have been fairly within contemplation when the contract was made. It cannot be assumed that any part of this loss would have been sustained by the plaintiff if he had been permitted to perform his contract. And assuming, as we must here, that the exclusion of the plaintiff's company from the use of the opera house at the time in question was caused by the defendants' breach of the contract, the plaintiff's loss, equal to the amount of his expenses legitimately and essentially incurred for the purpose of its performance, was the consequence of their default and properly recoverable by him. (*Driggs* v. *Dwight*, 17 Wend. 71; *Giles* v. *O'Toole*, 4 Barb. 261; *Taylor* v. *Bradley*, 39 N. Y. 129, 142.) These views lead to the conclusion that none of the exceptions were well taken, and that the judgment should be affirmed.

All concur, except Potter, J., not voting.

Judgment affirmed.