The judgment appealed from should be reversed, and a new trial ordered; costs to abide event.

---

(10 Misc. Rep. 672.)

## BASSETT v. FRENCH.

(Common Pleas of New York City and County, General Term. January 7, 1895.)

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—DAMAGES.
   In an action for the wrongful discharge of a servant, when the trial takes place before expiration of the stipulated term of employment, the plaintiff can recover damages only to the time of the trial.

2. SAME.
   When, in such action, the defendant defaults in pleading, on the assessment of damages in the trial, plaintiff may recover damages to the time of the assessment, but not beyond.

3. SAME—FACTS ADMITTED BY FAILURE TO DENY.
   If, upon such assessment, a partial defense in mitigation of damages be available to defendant (as to which, quaere), he may not introduce evidence of a fact admitted by his failure to answer.

4. SAME—OBTAINING OTHER EMPLOYMENT.
   A discharged servant is bound only to reasonable diligence in quest of other employment, and the cancellation of an engagement contracted after the discharge, if prudent and in good faith, is no breach of the obligation to the defendant master.

5. SAME—CANCELLATION OF CONTRACT.
   Having wrongfully refused to receive plaintiff in his service, defendant may not treat plaintiff's sickness while in the employment of another, for which sickness plaintiff was not discharged by that other, as a cancellation of defendant's own contract with the plaintiff.

(Syllabus by the Court.)

Appeal from judgment on report of referee.

Action by Charles O. Bassett against Thomas Henry French to recover damages for wrongful discharge. The complaint set out the contract of service by which the defendant refused to take plaintiff into his employment. Defendant made no answer, and thereupon a reference was ordered to assess damages. The assessment was had before expiration of the stipulated term of employment. From part of the judgment on assessment of damages by the referee, and from an order denying a motion for a larger judgment, plaintiff appeals. From the whole judgment, and from an order denying motion to

set aside the report of the referee on the assessment of damages, defendant appeals.    Modified.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Henry D. Hotchkiss, for plaintiff.
A. J. Dittenhoefer, for defendant.

PRYOR, J.   The plaintiff had the option to sue either immediately on the renunciation of the contract by the defendant, or to await the expiration of the stipulated period of service.   In the latter alternative, clearly, the plaintiff could recover damages equivalent in amount to the salary for the entire term of service, less actual or attainable earnings in other employment.   The period of service being past, no element of uncertainty or speculation could enter into the computation of damages.   The stated salary would be the prima facie extent of recovery, and what plaintiff had or might have earned would be susceptible of definite ascertainment.   The contingency of the termination of the employment by the death of either party, or of an unforeseen rise or fall in the value of the service after the discharge, would be out of the calculation.   Nothing would be left to chance or conjecture.

But how is it if, as here, the action be brought and tried before the end of the term of employment?   How can the salary for the entire period be the apparent measure of damages?   Either employer or employé may die the day after recovery · of such salary, in which event, beyond question, the plaintiff would receive a compensation to which he has no title.   Or the employé may be incapacitated for the service by physical or moral disability, in which event, again, he would recover a compensation to which he has no right.   Then, too, the prima facie amount of damages—the sum of the agreed salary—is to be reduced by actual or available earnings.   But how is allowance to be made for earnings as actual when they are altogether contingent and uncertain, or for potential earnings, which nobody can foresee, and which countless casualties may intercept? Equally, therefore, in reason and in equity, a servant wrongfully discharged must elect, at his peril, whether to sue immediately on breach of the contract, or at the expiration of the period of employment.   If he covets the whole salary, less the requisite deductions, as the amount of his recompense, he must defer the trial until his damages may be ascertained with legal certainty.   Or, if he be impatient for immediate indemnity, he must be content with such damages as are within the domain of calculable probabilities.   The election is with him, and his should be the penalty of the choice.   We are of opinion, therefore, that the learned referee proceeded upon sound principle in allowing plaintiff the salary, less earnings, to the end of the trial, and in disallowing all claim to damages subsequent to that period.   Nor is any authoritative adjudication adduced against the conclusion.   The case at bar is distinguished from all others in the circumstance that here the trial was had and the damages assessed before the expiration of the stipulated period of service.   In Solomon v. Vallette, 9 Misc. Rep. 389, 30 N. Y. Supp. 193,

the term ended September 25, 1887, and the trial occurred December 1, 1888. Moreover, the action was for wages. But, apropos of the point in controversy, the court said (page 392, 9 Misc. Rep., and page 193, 30 N. Y. Supp.):

"If the action were for damages, the plaintiff could have recovered such damages as he could have shown he had sustained at the time of the trial. * * * It is only in cases where the term of employment has expired at the time of the trial that the whole amount of wages for the whole term under the contract furnishes, prima facie, the proper measure of damages."

In Colburn v. Woodworth, 31 Barb. 381, 383, the question involved was of res judicata, but in enumerating the remedies open to a wrongfully discharged servant the court said:

"Or, thirdly, he may wait until the termination of the period for which he was hired, and claim as damages the wages agreed to be paid by the contract."

In Howard v. Daly, 61 N. Y. 362, the trial occurred after the expiration of the period of employment; and so the damages were, prima facie, the amount of the wages for the full term. Nothing in the opinion of the court authorizes the inference that, had the trial taken place pending the term of service, the plaintiff might have recovered on the basis of wages not earned, and possibly never to be earned. We concede the proposition that, in an action for breach of contract, loss subsequent to the trial may be compensated; but our position is that, although the amount of such loss may be uncertain, the fact of such loss must be certain. Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264; Bernstein v. Meech, 130 N. Y. 354, 359, 29 N. E. 255; Moss v. Tompkins, 69 Hun, 288, 23 N. Y. Supp. 623. Here, as already shown, loss subsequent to the trial was contingent on so many unforeseen casualties in the future as to be incapable of legal proof. 130 N. Y. 359, 29 N. E. 255. In Schell v. Plumb, 55 N. Y. 592, so confidently cited by plaintiff, the damage after the trial was obvious and inevitable. While the plaintiff's contention has the sanction neither of reason nor of adjudged cases, the defendant's position, on the contrary, is supported, not only by unanswerable argument, but by the authority of the court of appeals:

"If the trial is before the expiration of the term, the plaintiff is entitled to recover such actual damage as the evidence shows he has sustained up to the time of trial. * * * Where the action is commenced during the term, but the trial occurs after the expiration of the term of service, the plaintiff may recover the same damages that he would have been entitled to recover, had the action been commenced after the expiration of the term." Everson v. Powers, 89 N. Y. 527, 528.

This, to be sure, was dictum, merely; but, having the concurrence of the entire court, with us it is persuasive, and, reinforced by other authority, is conclusive. 2 Suth. Dam. 471; Wood's Mayne, Dam. 197; Wood, Mast. & Serv. 250; Van Winkle v. Satterfield, 58 Ark. 617, 25 S. W. 1113; Association v. Weidman (Ill. Sup.) 28 N. E. 834; Davis v. Ayres, 9 Ala. 292; Martin v. Everett, 11 Ala. 375; Gordon v. Brewster, 7 Wis. 355.

It is argued that, since the plaintiff can have but one action for breach of the contract, if he may not now recover his total damage he will be remediless for the residue. But whose is the fault? The answer is, his own; in so precipitating the trial as to deprive himself of the complete reparation he might otherwise have realized.

Successful in his contention that he is not chargeable with damages accruing after trial, the defendant then asserts that, in legal effect, the trial was as of the date of his default, and that so he is not answerable for loss suffered by plaintiff subsequent to the default. In this position we are unable to sustain him. By his default in pleading, the defendant admitted the traversable allegations of the complaint,—nothing more (Thompson v. Lumley, 7 Daly, 74); but the averment of damage was not issuable, and yet was to be proved, though not denied (Hackett v. Richards, 3 E. D. Smith, 13, 14). By failure to answer, the defendant did not concede plaintiff's right to the relief demanded, but only his title to such damages as might be recovered upon the allegations of the complaint. Argall v. Pitts, 78 N. Y. 239, 243. The judgment entered on the default was interlocutory merely, and before final judgment for more than a nominal sum an intermediate assessment of damages was indispensable. Code Civ. Proc. §§ 1214, 1215. Upon such assessment the defendant was entitled to appear, and challenge the amount of recovery, even by affirmative evidence, in diminution of damages. Thompson v. Lumley, 7 Daly, 74, 80. Only upon the ascertainment of the damages by judicial action, whether by the court or a referee or a writ of inquiry, could final judgment be rendered in favor of the plaintiff. Code, § 1215. Indisputably, then, the assessment of damages was a trial, and the only trial possible, in default of an answer. If the default were a concession of the amount of damages, then perhaps damages after the default would not be recoverable; but as the default was an admission only of plaintiff's title to some damages (Bullard v. Sherwood, 85 N. Y. 253), the extent of which was yet to be ascertained, the amount of damages recoverable was the amount shown to have been sustained at the time of the trial of the question. Otherwise, in every case the right to complete reparation, whether for tort or breach of contract, would be defeated by the defendant's failure to answer; and thus a confessed wrongdoer would enjoy an immunity withheld from him who denies the delict, and makes defense. It is answered that, if this be so, then a plaintiff, by delaying judgment on the default, may enhance his damages, whereas the law requires him to diminish them. Conceding the validity of the argument, it only shows a dilemma from which either the wrongdoer or the injured party must suffer,—the former, by making full recompense for his wrong; and the latter, by submitting to an inadequate reparation,—and surely the law will not be alert to rescue the wrongdoer from the consequences of his misconduct, and to deny the injured party his rightful redress. But is not the grievance urged by the defendant imaginary? Why might not he, upon his default, apply to the court for an assessment of damages? Nothing in the Code forbids it, and, by recognizing his right to contest the assessment (section 1219), it seems to imply his right

to become an actor in the proceeding. In any event, if the hardship exist, it is not so great as the defendant may suffer from the exercise of the conceded right of the plaintiff, namely, to rest upon the wrong till the end of the term of service, and then recover damages for the entire period; and, if such delay to sue be not an inadmissible aggravation of damages, how, when an action is promptly instituted, can a mere dilatory assessment be a bar to the recovery of full satisfaction? The argument of the learned counsel for defendant is ingenious and plausible, but it proceeds upon a fallacy, and is supported by cases to which the present bears an imperfect analogy.

After the cancellation of his engagement by the defendant, plaintiff took service with Hasham; but, fearing that Hasham would likely not pay him, he hired himself to Duff. While in the employment of Duff, plaintiff suspended singing for two weeks on account of a cold; and defendant contends that he was released from after liability, because, "had he remained with the defendant, he could not have recovered against the defendant beyond the time he became sick." Formally stated, the argument is: If plaintiff had been in defendant's service, and had fallen ill, the defendant might have canceled the engagement; therefore, as he caught cold in Duff's service, the defendant is discharged from further liability. But the sickness of a servant does not, ipso facto, end his engagement; it only gives the employer an option to cancel it; and he may continue it, if his interest so suggest, and the other assent. The undisputed fact is that the employment with Duff was not terminated by the plaintiff's indisposition, and suspension of work for Duff is not the legal equivalent of the cancellation of the contract with the defendant. Suppose the plaintiff had been unable to obtain other employment after his dismissal by the defendant. Would a casual indisposition during his enforced idleness have absolved defendant from the consequences of his breach of contract? In the actual case, the position of the defendant is still more untenable. Having broken his contract by refusing to receive the plaintiff in his service, he asserts a privilege open to him only had he kept his contract and employed the plaintiff, namely, a benefit equivalent to the discharge of the plaintiff for inability to render the service. "This would contravene the fundamental maxim of the law that no man shall take advantage of his own wrong." Hard v. Seeley, 47 Barb. 428, 434; Newton v. Porter, 5 Lans. 416. Explicitly in point against defendant's contention is Cuckson v. Stones, 28 Law J. Q. B. 25, 1 El. & El. 248.

The defendant challenges the judgment upon the further ground that the referee erred in refusing to reduce the damages by an allowance for wages the plaintiff should have earned in other employment. The burden was on the defendant to prove that the plaintiff did obtain or might have obtained other employment. Howard v. Daly, 61 N. Y. 362; Thompson 'v. Wood, 1 Hilt. 93; and cases cited collected in note to Decamp v. Hewitt, 43 Am. Dec. 213. A reduction of damages on account of other employment is a partial defense, and must be pleaded. Code, § 536. Upon an assessment of damages, matter in reduction of damages, constituting a partial defense, may not be proved. Ford v. David, 1 Bosw. 570. True, the Code (section

536, last clause) allows such evidence upon an assessment, but apparently in actions only for breach of promise to marry, or for personal injury, or an injury to property. Assuming, however, the competency of the evidence in this case, we are of opinion that the referee rightly disallowed the rejected charges against the plaintiff. He was bound only to reasonable diligence in quest of other employment (Gillis v. Space, 63 Barb. 177; Farrell v. School Dist. 98 Mich. 43, 56 N. W. 1053; Howard v. Daly, 61 N. Y. 362), and the proof is that he fulfilled the obligation. Having credited defendant with every dollar he actually received, he is not responsible for money he earned, but could not collect. Toplitz v. Ullman, 2 Misc. Rep. 130, 20 N. Y. Supp. 863. He was not bound to continue in an employment, of which the reward was precarious; and he acted with provident foresight, as well for the defendant as himself, in canceling both the Tavary and Duff engagements. He did not loiter a moment in willful or inexcusable idleness, and he judiciously availed himself of every opportunity to earn the utmost money by vigilant enterprise. What more could be required of him? The suggestion of a relation of suretyship between himself and the defendant, binding him to the uberrima fides, is preposterous. It is countenanced by no authority. It stands upon no reason. It exacts the sacrifice of the innocent victim, and secures the wrongdoer against the consequences of his delinquency. Without further discussion, we are content with the disposition of the point in the argument of the learned referee.

But a single exception in the case may be supposed to require notice, and that is to the rejection of a tender of evidence. The object of the offer, says the learned counsel in his brief, "was to show that the defendant had the right to terminate the contract at any time, for any cause, on the payment to plaintiff of one week's salary." What was this but proffer of proof of a defense to the action? By his failure to answer, the defendant admitted the wrongful breach of the contract, and, upon the assessment, was restricted to proof merely in mitigation of damages. For this purpose the evidence was inadmissible. Thompson v. Lumley, 7 Daly, 74, 83; Allen v. Maronne (Tenn.) 23 S. W. 113; Watson v. Russell, 7 Misc. Rep. 636, 28 N. Y. Supp. 26. The evidence was rightly rejected, too, because purporting a parol contradiction of a written agreement, which, by unequivocal language, makes special provision for the termination of the contract.

From the damages claimed by plaintiff, deduction must be made for his two weeks' disability. Judgment reduced by $300, and, so modified, affirmed, without costs to either party. All concur.