WILLIAM S. HART and MARY HART, Copartners Doing Business under the Firm Name and Style of WILLIAM S. HART COMPANY, Respondents, Appellants, v. UNITED ARTISTS CORPORATION, Appellant, Respondent.

First Department, July 16, 1937.

*Arthur F. Driscoll* of counsel [*Edward C. Raftery* and *Milton M. Rosenbloom* with him on the brief; *O'Brien, Driscoll & Raftery,* attorneys], for the defendant, appellant, respondent.

*Frederick Hemley* of counsel [*Jesse Hemley* with him on the brief; *House, Grossman, Vorhaus & Hemley,* attorneys], for the plaintiffs, respondents, appellants.

CALLAHAN, J. The action was one for damages for breach of a contract, the substance of which was that William S. Hart was to produce and play the star role in a motion picture which the defendant was to distribute. The contract was in writing, and shortly after its execution was assigned by William S. Hart to the plaintiffs, a partnership.

The contract was entered into in April, 1925. The picture was produced between August and November, 1925. Its title was "Tumbleweeds." Among the provisions contained in the contract were requirements that defendant was to distribute this picture in quite the same manner as the pictures of certain other designated star performers which defendant had been distributing. It provided that defendant was to use its best efforts to make the return from "Tumbleweeds" as large as possible consistent with good business practices, and was to lease the picture separate and distinct from any other motion picture.

These provisions, plaintiffs claim, were breached. They assert that the defendant booked the picture in conjunction with an inferior picture in which an officer of the defendant was financially interested as producer. The practice complained of is what is known as "block booking."

There were other charges in plaintiffs' complaint, but only those mentioned were deemed sufficiently established to submit to the jury.

The main questions involved in defendant's appeal are (1) whether there was sufficient evidence to justify the jury's finding of "block booking," and (2) whether a proper rule of damages was submitted for the jury's consideration.

The determination of the first question requires a brief review of the nature of the business involved and the evidence which plaintiffs contend established the charge of "block booking." Eight or more pictures were being distributed by defendant at the same time as "Tumbleweeds." Some of these pictures portrayed famous stars of the moving picture world, including Chaplin, Pickford, Fairbanks, Valentino, and productions by D. W. Griffiths. Included in the group was a picture known as "Wild Justice," which starred an unknown dog, and which the parties concede had a smaller sales value than any of the other pictures. It is the last picture which plaintiffs say was favored in the selling.

Pursuant to the general custom in the business of distributing pictures, efforts were made to book the picture long before it was actually produced. In order to ascertain an amount which the distributor should attempt to obtain for a proposed picture, it was customary to fix a "quota" or hoped for income from the picture. This permitted the fixation of a scale of prices based on a percentage of the quota realized in various areas of the country according to the experience in connection with prior sales. As applied to a star performer who had previously made pictures under contract with the defendant, the quota was fixed by comparison with prices obtained in selling such earlier pictures. Defendant, however, had no previous experience in selling Hart's pictures. It, therefore, set an arbitrary quota of $800,000.

Defendant had numerous exchanges throughout the country and salesmen in each exchange. It was the custom for these salesmen to visit exhibitors throughout their districts and endeavor to obtain contracts for the exhibition of the pictures. The proper performance of defendant's contract required that it use its best efforts to obtain as favorable a price as it could for Hart's picture, and sales thereof were to be made separately and independently of other pictures.

"Tumbleweeds" grossed approximately $346,000. There were 11,396 contracts made for its exhibition. This was a larger number of sales than any other picture being distributed by defendant during the same period except one, but the gross income from

many of the other pictures largely exceeded that obtained for "Tumbleweeds."

"Wild Justice" grossed $190,000 from 9,834 contracts.

Plaintiffs' picture cost approximately $300,000 to produce. "Wild Justice" cost between $15,000 and $30,000.

Plaintiffs' contention is that there was "block booking" of "Tumbleweeds" together with "Wild Justice," and that as a result thereof plaintiffs suffered a loss. They received under their contract sixty-five per cent of the gross from the sales made in the United States, which turned out to be less than the cost of production. The cost of production, however, was entirely within plaintiffs' control. Hart's obligation was to deliver to the defendant a completed picture. The cost did not vary defendant's obligations or rights. There is evidence, however, that the approximate cost was known to the defendant shortly after the time sales commenced.

Plaintiffs contend that from the beginning the defendant failed to maintain the prices that would have resulted from the "quota" of $800,000. Plaintiffs claim that this is some evidence of failure by defendant to use its best efforts in selling plaintiffs' picture.

There was no proof, however, that better prices could have been obtained than those actually received, unless that conclusion is justified by the evidence offered to show "block booking."

Plaintiffs' proof concerning "block booking" consists largely of a comparison of the contracts made with a number of theatres for the exhibition of "Tumbleweeds" and those made with the same theatres for the exhibition of "Wild Justice." All of the contracts were in writing and copies submitted to plaintiffs. Plaintiffs also examined the books of defendant, not only in connection with the distribution of plaintiffs' picture, but in connection with the distribution of other pictures during the same period.

Plaintiffs rely largely on approximately 224 instances in which they draw comparisons; 149 of these cases involved contracts for "Tumbleweeds" made on the same day for the same price as "Wild Justice." The remaining instances might be grouped into the general classification of those cases in which some notation was found on plaintiffs' contracts which might indicate that the sale of "Tumbleweeds" was contingent on the acceptance of contracts for other pictures.

The 149 instances where the sale of "Tumbleweeds" was made on the same day and for the same price as "Wild Justice" might, standing alone, be considered some proof of failure to use best efforts to sell "Tumbleweeds," in view of the admission by the

parties that " Wild Justice " was a picture expected to sell for less.

Defendant contends, however, that this is explained by the fact that salesmen in each instance attempted to sell each picture for as high a price as possible, and in these instances salesmen may have obtained a somewhat larger price for " Wild Justice " than was anticipated.

The evidence indicates that, in practically all the other sales where we have comparative figures, the price obtained for " Tumbleweeds " was larger than that obtained for " Wild Justice," sometimes being two or three times such amount. No direct evidence was obtained from any exhibitor in any of the 149 cases to show that the identity of price was due in any way to any improper conduct on the part of defendant's salesmen. It seems entirely speculative to permit a jury to find that there was " block booking " or some other breach of defendant's duty to obtain the best price merely because of 149 sales for identical amounts, in the face of the fact that there were 11,000 sales of " Tumbleweeds " indicated to be for larger amounts.

As to those instances where there was some notation on the contracts with respect to acceptance of other pictures, we find only one case where the notation seems to indicate that the sale was not to be effective unless contracts for other pictures were accepted. This was a sale of the picture in a small town in Oklahoma where the price obtained was only twenty-five dollars. The language used was " This contract must be accepted or rejected with others of this date." There is no evidence that the price for " Tumbleweeds " was not separately fixed in this instance. The notation indicates merely that the exhibitor stipulated that defendant could not accept this contract and reject others. Instead of showing a discrimination against Hart's picture, it indicates that the exhibitor feared losing the acceptance of the picture of other performers.

Another form of notation found on several contracts may be illustrated by the following language used in a typical case: " This picture contracted for in conjunction with 16 other pictures with the agreement that one or more pictures will be played per month starting on or before September 1st." Such clauses failed to show any joint fixation of prices. They merely provided for a fixation of playing dates.

There were some other contracts where there were delays of several months between the date of offer and the date of acceptance. In practically all of these cases, however, the prices obtained for

" Tumbleweeds " exceeded that obtained for " Wild Justice," and there was no evidence whatever that the delay was unfavorable in so far as the prices obtained for " Tumbleweeds " were concerned.

Considering the evidence as a whole, and in view of the fact that these pictures were distributed throughout a wide territory with many salesmen, all pursuing individual efforts, we find insufficient in the present record to justify a finding by the jury of any " block booking." It was not anticipated, nor did the contract require, that the salesmen were to book the separate pictures on separate dates. One visit to the smaller towns and cities was all that could be expected. The salesmen were required to offer all of the pictures on this visit. If the price obtained for " Wild Justice " was increased at the expense of " Tumbleweeds," some direct evidence of that fact would seem procurable. There is no such proof in the record.

The sales criticized by plaintiffs total about $13,000 out of $346,000. Plaintiffs ask to have the inference drawn from the facts established with respect to these sales that they were effected by " block booking," and ask further that, from this inference, a similar inference be made as to all of the remaining sales. Neither inference would seem justified by the proof.

The verdict of the jury was against the weight of the credible evidence with respect to any finding of " block booking," or a finding that defendant failed to give its best efforts in selling " Tumbleweeds."

In addition to the foregoing, we find that the rule of damage applied was improper. The jury was instructed that, if the breach was established, it might award such damages as flowed therefrom, not exceeding the aggregate of the difference between what defendant paid William S. Hart and what he necessarily spent in the production of the picture, plus the reasonable value of Hart's services as an actor in making the picture. The theory of the trial court was that, if a breach was established, plaintiffs were entitled to recover the value of Hart's services plus their total loss in making the picture, as the profits that would have followed proper performance were not readily ascertainable. This theory was based on the rule laid down in such cases as *United States* v. *Behan* (110 U. S. 338) and *Bernstein* v. *Meech* (130 N. Y. 354). Those cases, however, involved instances where the party breaching the contract had cut off all possibility of performance before completion. The courts held that under such circumstances the offending party would not be heard to say that the one injured could not recover at least the outlay for expenses to date of breach, plus

the value of personal services already performed. The present case, however, was not one where plaintiffs' performance was prevented. The complaint is with respect to the quality of defendant's performance. The picture was made and the period within which it might be sold had fully expired long before any claim made with respect to a breach. Indeed, plaintiffs waited until five years after the last payment before starting the suit. Under such circumstances it does not seem to us that the entire loss which may have been suffered in making the picture should be chargeable to the breaches complained of, at least not without some proof that such loss flowed from the breach. Plaintiffs only attempted to prove breaches with respect to a comparatively small number of sales. Even if such breaches were established, there would be, on the facts shown, no justification for charging to them all losses. The alleged total loss would not flow therefrom and damages must be certain not only in their nature and quantity but clear in respect to the cause from which they proceed. (*Rochester Lantern Co. v. Stiles & Parker Press Co.*, 135 N. Y. 209.)

Other specifications of damage were submitted which we find it unnecessary to discuss in view of the fact that they may not be offered on a new trial as they related to total losses sustained in making the picture.

Plaintiffs' appeal raises the question as to whether interest should have been included in the verdict. Under section 480 of the Civil Practice Act, the addition of interest to the damages flowing from a breach of contract is mandatory. Interest must be added from the date of the breach.

In view, however, of our reversal of the judgment, plaintiffs appeal should be dismissed.

On defendant's appeal, the judgment should be reversed, and a new trial ordered, with costs to defendant-appellant to abide the event.

MARTIN, P. J., GLENNON, DORE and COHN, JJ., concur.

Judgment appealed from by the defendant unanimously reversed and a new trial ordered, with costs to the defendant-appellant to abide the event. Appeal by plaintiffs from the order and part of the judgment dismissed.