Breitel, J. (concurring).
It is not enough to conclude, as the court is unanimous in doing, that defendant Irvin Industries may not, on this record, contend that an invalid patent is involved. The fact is that in the Appellate Division the majority held, incorrectly it is suggested, that the validity of the patent was not crucial to plaintiff’s cause of action. Notably, this action, however pleaded, involves the copying of a device and not an unfair use of a trade secret or breach of a confidential relationship. Hence, the plausibility albeit the incorrectness of defendant’s contentions that this action is for an “infringement ” and, therefore, exclusively within the Federal jurisdiction. Moreover, the dissenter at the Appellate Division most certainly viewed the action as not lying in the State court’s jurisdiction because it was in effect an action for infringement and that defendant had properly contested the validity of the patent. Thus, the issues are not disposed of completely by deciding that Federal exclusive jurisdiction does not attach merely because patent validity is involved, or that the record does not show that invalidity of the patent may be asserted. The nub is that plaintiff would have no cause of action if it seeks protection from the State courts, directly or indirectly, for an *175 unpatented or unpatentable article, a point discussed below. Yet it is also true that involvement of a patent does not alone deprive the State court of jurisdiction.
For these reasons it is incumbent to elaborate upon the result upon which the court is in agreement.
After trial plaintiff recovered a judgment for damages for tortious interference with an exclusive franchise or licensing agreement covering a patented article. Defendant, Irvin Industries, the alleged tort-feasor, manufactured and sold in the United States a quantity of the patented article for which plaintiff, American Harley, held an exclusive license from one of the British patent owners, Harley Patents (International) Limited. Before doing so, Irvin obtained the “permission ” of the British patent owner, despite the prior exclusive license to American Harley, and the owner’s express covenant to American Harley not to grant permission to others.
Defendant Irvin in appealing contends that the State courts are without jurisdiction, because, however disguised, plaintiff’s cause of action is really for infringement of the patent, in which event the Federal courts have exclusive jurisdiction. On the other hand, defendant argues that if the patent is invalid then there was no tortious interference with any protectable interest; the permission it obtained from British Harley was of no significance since it or anyone else was free to manufacture and distribute the patented article. It also argues that the complaint fails to state a cause of action in that it alleges that defendant was given a license to sell the article by a co-owner of the patent not in privity with plaintiff. Finally, it urges that there is insufficient proof of damages, both as to cause and extent.
Plaintiff recovered an aggregate judgment of $88,989.12 after a jury trial. Causes of action on behalf of plaintiff Alan P. McHenry, president of American Harley, were dismissed, as were causes of action against Charles H. Pulley, president of Irvin. A cause of action for slander of title was dismissed during the trial. The Appellate Division, by a divided court, affirmed (33 A D 2d 759).
The Appellate Division order should be affirmed, but not for the reasons there stated. On analysis plaintiff establishes a separable common-law cause of action apart from any rights deriving from Federal patent law. In consequence, plaintiff *176 properly pursued its State remedy as an alternative to a patent infringement action in the Federal courts.
In 1958, plaintiff American Harley entered into an exclusive licensing agreement for the manufacture, sale and distribution in the United States and Mexico of items covered by certain secured and pending patents held by British Harley (Harley Patents [International] Limited). In addition to conferring the exclusive license, British Harley covenanted not to permit others to make or sell the items in those countries. One pending patent covered a two-piece automobile safety seat belt buckle. Although the agreement recited that British Harley was the sole and exclusive owner, in fact a half ownership was held by the inventor, Frank Bernard Harley, managing director of British Harley. An American patent was granted in 1961. A British subsidiary of Irvin had acquired a license in 1956 to manufacture, use and sell the buckle in Great Britain, and most of Europe, Asia and parts of Africa.
Irvin, interested in selling the buckle in the American market, and on the advice of British Harley, negotiated with American Harley. The parties, however, could not agree on a price for the buckles to be furnished to Irvin by American Harley. During the extensive negotiation period, British Harley, displeased with the lack of progress, threatened to revoke American’s license. Although British Harley ultimately decided to maintain its outstanding license with American Harley, it, nevertheless, authorized Irvin Industries to sell in the United States 50,000 of the buckles Irvin had imported or had made in the United States. British Harley declined to furnish defendant Irvin with an indemnity agreement, which it had first requested as essential.
Irvin sold its buckles in the United States both before and after receiving permission from British Harley. It told prospective purchasers that it expected to be licensed as the American manufacturer of the patented buckle. Some 20,000 buckles were imported from Irvin’s British subsidiary, and 5,000 manufactured in the United States. At least 9,000 buckles were sold by Irvin in the United States.
Plaintiff American Harley’s basic contention is that defendant Irvin induced British Harley to breach its agreement with it for *177 an exclusive license and with the shield of permission from British Harley competed in the American market to plaintiff’s damage. It argues that its failure to sell more than 1,000 of its buckles was due to this tortious interference. Beyond that it argues that its claim rests on a common-law tort of interference with its exclusive agreement and does not depend upon the patent, its validity, or the license as such which it had obtained from British Harley.
The jury found both tortious inducement of breach of contract and unfair competition, and awarded full damages as requested.
In the Appellate Division the majority and dissenting opinions turned on whether the validity of the patent would be determinative of the outcome of the suit. Characterizing the license as a “franchise contract ”, the majority reasoned that the causes of action were based on rights recognized at common law independent of the validity of the underlying patent. Mr. Justice McGivbrn, in dissenting, argued that the force of the licensing agreement was tied to the validity of the underlying patent, which could only be determined in a patent infringement action brought in a Federal court. Moreover, the dissenter stated that the only wrong alleged was patent infringement which could be determined only in the Federal courts. (33 A D 2d 759, 760.)
That validity of the patent is involved in an action is not determinative of jurisdiction. Although Federal courts have exclusive jurisdiction over cases arising under the patent laws (U. S. Code, tit. 28, § 1338, subd. [a]), State courts may determine the validity of a patent when incidental to an action based on contract or tort (see Middlebrook v. Broadbent, 47 N. Y. 443, 446—447; Zenie v. Miskend, 245 App. Div. 634, 637-639, affd. 270 N. Y. 636). The principle was recently affirmed in Lear, Inc. v. Adkins, (395 U. S. 653) holding that a licensee was not estopped in an action brought by the owner for royalties from proving that the patent was invalid. Although the validity of the patent was now squarely in issue, the Supreme Court nevertheless remanded the case to the California courts, to pass on the alleged invalidity. (Id., at pp. 670-671, 675-676.) The issue in determining jurisdiction is whether the alleged causes *178 of action are in fact different from an action for infringement, protecting rights and interests consistent with, but apart from, those created by the patent laws.
Despite the Appellate Division characterization of the present action as one for inducing the breach of a “ franchise contract ”, the validity of the patent is an integral part of the cause of action. The gravamen of American Harley’s complaint is that Irvin is interfering with an exclusive patent license American Harley had procured from British Harley.
If the patent be invalid, none could enforce exclusive rights in the buckle, or recover damages for interference with such illusory rights. Sears, Roebuck & Co. v. Stiff el Co. (376 U. S. 225) and Compco Corp. v. Day-Brite Lighting (376 U. S. 234) have held flatly that State courts may not enjoin, or exact damages for the copying, by a stranger, of an unpatented device. The rationale is that Federal patent protection is exclusive, and State courts may not, on theories of unfair competition, provide the equivalent of patent protection to articles not patented, or incapable of patent, or extend the lives of patents granted by the Federal Government, thus defeating the policy of providing limited protection to patented inventions and unlimited availability of unpatented and unpatentable devices.
Consequently, given an invalid patent, under the Sears and Compco rule, there is no bar to a stranger’s copying the basic design of the buckle at will, with the possible exception that he not mislead the public as to the manufacture of the article or commit any other act of unfair competition cognizable at the common law. If, by virtue of the invalid patent, an inventor would be powerless to confer an exclusive right to manufacture, use, or market, an interference with that illusory right would not be actionable, and would not involve any provable damages.
Although the patent’s invalidity could have been raised as a partial or complete defense in this action, it was not raised. It was involved only in a collateral matter. Reference to possible invalidity was made incidentally by Irvin to justify its negotiations with British Harley in order to show that its reduction of royalty payments for its non-American sales was not designed to force British Harley to give it the permission to compete with American Harley. It was neither pleaded nor argued that the patent was in fact invalid, or that this consti *179 tuted a defense. The validity of the patent, therefore, stands unchallenged in the action.
As noted earlier, the fact that a valid patent may be essential to plaintiff’s causes of action is not determinative of jurisdiction. State court jurisdiction depends upon whether the causes of action are based upon common-law or State causes of action, whether for breach of contract, tortious interference with contract, or unfair competition.
American Harley contends that its claims involve valid State causes of action, and that only State law provides a remedy for Irvin’s conduct, consisting of tortious interference or unfair competition. It contends that the license agreement is an executory contract as well as a license and that a State remedy will lie for breach of the contract or tortious interference with it. It buttresses this contention with the argument that if there were no State remedy in this case it would have none, since it may not sue for an infringement against one who has the license or permission of the patent owner.
The argument that State jurisdiction should be recognized out of necessity lacks basis. There is no support for the view that a suit for patent infringement is not available to American Harley. Indeed, the general requirement that a licensee sue in the name of the patent owner is not inflexible. Where the patent owner is the infringer, a licensee may sue him for infringement in the licensee’s name alone (Littlefield v. Perry, 21 Wall [88 U. S.] 205, 222-223). It follows that a third party has no greater immunity by virtue of an ineffective license from the patent owner (see Excelsior W. P. Co. v. Pacific Bridge Co., 185 U. S. 282, 290-291, 294-295; cf. Goodyear v. McBurney, Fed. Case No. 5,574 [10 Fed. Cases 699]; Ellis, Patent Licenses [3d ed.; Deller], § 391). Moreover, if the licensee must sue in the name of the patent owner who is without the jurisdiction, he may join the owner as coplaintiff without his consent (Independent Wireless Co. v. Radio Corp., 269 U. S. 459, 472).
The existence of a Federal remedy will not preclude State courts from affording their own remedies, providing that relief is based on cognizable and separable common-law rights. Those with the power to enforce a patent may elect to waive the infringement and, instead, sue on the agreement relating to the use of the patented article. The State courts have jurisdiction *180 even if damages would be measured by the same loss which results from infringement, and recovery would preclude further damages for the infringement. (Henry v. Dick Go., 224 TJ. S. 1, 14.) Invasions over which the State courts may have cognizance include palming off, or other forms of unfair competition, or affronts to contract rights based on patents, such as royalties (Lear, Inc. v. Adkins, 395 U. S. 653, supra; Luckett v. Delpark, 270 U. S. 496, 510-511; Condon v. Associated Hosp. Serv., 287 N. Y. 411; Wise v. Tube Bending Mach. Co., 194 N. Y. 272, 278; Zenie v. Miskend, 245 App. Div., 634, 637-639, affd. 270 N. Y. 636, supra; Koratron Co. v. Deering Milliken, Inc., 418 F. 2d 1314, 1317-1318, but see Continental Store Serv. Co. v. Clark, 100 N. Y. 365, esp. pp. 368-369).
The instant cause of action does not arise directly out of an agreement between American Harley and Irvin, but out of Irvin’s alleged interference with the agreement between American Harley and British Harley. That interference consisted of obtaining from British Harley, contrary to its agreement with American Harley, permission to sell Harley buckles in violation of American Harley’s exclusive license.
As discussed earlier, that permission could confer no authority upon Irvin under the patent laws, or shield it from a patent infringement action. To that extent British Harley’s permission was a nullity. But apart from patent law, the permission did have impact. Permission, even if illusory, may encourage infringement which otherwise might not be attempted. By proceeding under a color of right the infringer minimizes potential harm to his commercial reputation and may increase his likelihood of sales. Irvin’s use of the permission in its promotional activity demonstrates the value of the permission. Thus, although the permission may have been legally illusory, an exclusive licensee has a legitimate interest in preventing such permission from being given. When a third party induces the patentee to breach his contract with the licensee, a State cause of action arises not only as to the patentee, but by logical and legal extension as to one who tortiously interferes with that contract and induces the breach.
Nor do the Sears and Compco decisions (supra) preclude a State cause of action. They deal with attempts by State courts to provide the equivalent of patent protection to articles either *181 unpatented or ineligible for patent protection. As discussed earlier, the instant cause of action is to enforce contract rights relating to inventions protected by the patent law, and, therefore, does not undermine Federal policy.
Irvin also argues in this court, for the first time, that the complaint fails to state a cause of action because it alleges that Frank Harley, one-half owner of the patent, granted a license to Irvin, and that he was not a party to the exclusive licensing agreement between American Harley and British Harley. Assuming that this is a complete defense in this action, as it is in an infringement action (see U. S. Code, tit. 35, § 262), it may not avail Irvin at this stage of the appeal. First, the silence at trial denied American Harley an opportunity to amend the complaint, or to prove at trial that Frank Harley was bound individually by the Harley American exclusive licensing agreement he signed as manager of British Harley. Second, the case went to the jury on plaintiff’s theory that the subsequent license to Irvin was signed by Harley as manager of British Harley, and not in his individual capacity. The jury, by its verdict, found that the permission had been given by the company and presumably not by Harley individually. Since the facts proved at the trial constitute a valid cause of action, argument will not be heard for the first time on appeal that the complaint was defective (see Cohen and Karger, Powers of the New York Court of Appeals, p. 637; McClelland v. Mutual Life Ins. Co., 217 N. Y. 336, 348; Schoepflin v. Coffey, 162 N. Y. 12, 16-17).
Irvin’s final argument challenges the adequacy of American Harley’s proof of damages, and causation. American Harley argued that while it could not prove lost profits, it was entitled to its production, development, and promotion costs.
The costs of the abortive venture were shown by estimating the proportion of American Harley’s total efforts and expenses devoted to marketing the buckle. This testimony, although less than precise, represented a fair approximation of American Harley’s loss. If it was shown that Irvin’s sales substantially ruined American’s prospects, American is entitled to its development expenses, apart from the speculative nature of the enterprise and the inability to prove lost profits (see Bernstein v. Meech, 130 N. Y. 354, 359-360).
*182 Although there is no direct proof of particular items of damage, such as testimony that particular sales were lost as a result of Irvin’s activities, the impact on American Harley’s sales efforts may be fairly inferred. Irvin, with its established sales organization, told potential customers that it would have the license to sell the Harley buckle, claimed its version of the buckle was greatly improved, and offered it for half the price that American Harley was asking. Given the showing of Irvin’s wrongdoing in this case, and the natural consequences of its acts, American Harley should not be required to prove more merely to recoup its losses in the project.
Accordingly, I concur in the view that the order of the Appellate Division should be affirmed.
Judges Scileppi, Bergan and Gibson concur with Chief Judge Fuld; Judge Breitel concurs in a separate opinion in which Judge Jasen concurs; Judge Burke taking no part.
Order affirmed.