"The act of the Legislature, sovereign over the matter of taxation, was express and mandatory in requiring this tax to be appropriated and raised. It left nothing to the judgment or discretion of the local authority. A failure to obey its mandate was a misfeasance, and a writ of mandamus may well issue to require the performance of the unperformed and neglected duty, if that duty may be now performed."

In People ex rel. Commissioners v. Common Council of City of New York, 45 Barb. 473, it was said:

"The Legislature having authorized and directed the mayor, aldermen, and commonalty of the city of New York to create a public fund or stock, for the erection of a public market, a mandamus will lie to compel the common council to issue the stock; the common council constituting the only agency or instrument by which the behest of the Legislature can be obeyed, and a mandamus being the only possible method by which that body can be compelled to act."

It was held in People ex rel. Scott v. Supervisors of Chenango, 8 N. Y. 317:

"The supervisors of a county may be compelled by mandamus to perform a duty required by law, which they have omitted at their annual meeting."

It is a fair inference from the facts stated in the petition, viewed in the light of the previous experience of the register, that his request for the appropriation of the sum of $50,000 for the payment of temporary copyists for the year 1914 was justified by the facts and circumstances stated, and was not an unreasonable estimate. I do not understand that the respondents controvert that fact. If, however, they desire to be heard to show that the amount asked for by the register is unnecessary or unreasonable, because the work now in hand or likely to be done would not justify the appropriation of so large an amount, an alternative writ will be allowed to try out that question; but, as I have said, this question was not raised upon the argument, nor in the affidavits submitted in answer to the petition. On the contrary, the very fact that the board allowed the sum of $18,000 for 15 extra clerks would be an indication that in its judgment the amount asked for would be required.

The motion will therefore be granted. Order to be settled in accordance with this memorandum.

---

(164 App. Div. 477)

RUBBER TRADING CO. v. MANHATTAN RUBBER MFG. CO.   (No. 6236.)

(Supreme Court, Appellate Division, First Department.   November 20, 1914.)

SALES (§ 372*)—CONTRACT—ANTICIPATORY BREACH—WAIVER.

Where, during the performance of a contract for the sale of "prime thin disk Manicoba rubber" at a specified price per pound, the buyer attempted to import two new terms into the contract, one requiring that there should be a laboratory test of the rubber before delivery, and the other that the rubber should be "round thin disks," and refused to accept deliveries unless such requirements were met, there was an anticipatory breach, which the seller did not waive by further tenders of performance before electing to treat the contract as broken and sue for dam-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

150 N.Y.S.—2

ages; there being no particular time within which it was required to make such election.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1089; Dec. Dig. § 372.*]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by the Rubber Trading Company against the Manhattan Rubber Manufacturing Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

See, also, 158 App. Div. 925, 143 N. Y. Supp. 1142.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Louis W. Stotesbury, of New York City, for appellant.
Harry D. Nims, of New York City, for respondent.

SCOTT, J. Plaintiff is an importer of crude rubber. Defendant is a manufacturer. July 12, 1912, plaintiff and defendant entered into an agreement for the sale and purchase of "about 15 tons prime thin disk Manicoba rubber at $1 per pound." The rubber was to be delivered, about 5 tons each month, in September, October, and November. To meet this contract plaintiff bought the necessary amount of rubber "to arrive." The parties had dealt for several years under similar contracts. In August plaintiff delivered about 5 tons of rubber under this contract, and defendant paid $11,120, the full price. After this lot had been delivered and paid for, defendant objected to the quality of a portion of it, and plaintiff took back 7,694 pounds. It delivered in place thereof 6,204 pounds, which defendant accepted, but refused to accept 1,768 pounds, which plaintiff offered to deliver to make up the amount which had been taken back.

Plaintiff had imported and held in warehouse a sufficient quantity of rubber, claimed to be of the proper quality, to complete the contract. The price of this grade of rubber began to fall after September 1st, and defendant began to interpose difficulties as to the acceptance of rubber. I think that it is fairly established by the evidence that the custom between the parties on the delivery of rubber under similar contracts was that a broker should examine the rubber on dock or in warehouse, and, if he found it of the proper quality, defendant accepted warehouse receipts, subject apparently to the right to reject or claim allowance if, when rubber arrived in the factory, it failed to come up to sample.

The complaint was originally framed on the theory that plaintiff had tendered full performance, which defendant had refused. It was amended, however, so as also to allege an anticipatory breach on defendant's part, and it is upon this theory that plaintiff has recovered. The difficulty with standing upon tender of performance was that, while plaintiff had made several written tenders, it had so qualified them that an acceptance of warehouse receipts would have precluded de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fendant from making any claim if, on examination in the factory, the rubber had proven to be deficient in quality.

The anticipatory breach was founded upon the claim that defendant had insisted upon importing two new terms into the contract, and refused to fulfill unless these were complied with. One was that there should be a laboratory test before delivery, and the other that the rubber delivered should be *"round* thin disks."  The court left it to the jury to say whether the defendant had so insisted, and, if so, whether it was a refusal to fulfill the contract according to its terms.  No fault is found with the charge, and there is evidence to sustain the jury's finding on these questions in favor of plaintiff.  Assuming the facts to be rightly found, there was a clear anticipatory breach, for the refusal of a party to complete a contract, except upon new terms not included in the original contract, is equivalent to a refusal to complete at all.

The defendant, however, invokes the rule that, while an anticipatory breach will entitle the party against whom it is made to sue at once for damages without tendering performance, still, in order to do so, he must elect to consider the contract as broken; and he urges that plaintiff's repeated tenders of performance are conclusive evidence that it did not so elect.  We do not so understand the rule.  It is true that, in order to sue upon an anticipatory breach, the party suing must elect to consider the contract as terminated by the breach; but there is no particular time within which he must make that election, and an offer, or repeated offers, to complete on the contract terms, or on modified terms, unless accepted by the vendee, does not constitute a waiver of the breach.  Canda v. Wick, 100 N. Y. 127, 2 N. E. 381; Frans Poel et al v. Brunswick-Balke-Collender Co., 159 App. Div. 365, 144 N. Y. Supp. 725.

The judgment and order appealed from should be affirmed, with costs.

LAUGHLIN, DOWLING, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J.  I do not concur in the affirmance of this judgment.  The action was to recover on a contract whereby the plaintiff agreed to sell and deliver to the defendant about 15 tons of prime thin disk Manicoba rubber, to be delivered, about 5 tons each month, during September, October, and November, 1912.  The complaint alleges that on or about the 16th day of August, 1912, the plaintiff delivered to the defendant about 11,120 pounds of said rubber, for which the defendant paid the contract price, and that thereafter, at various times in October and November, 1912, the plaintiff tendered to defendant certain quantities of rubber under the terms of the said contract, but that the defendant wrongfully refused to accept it or to pay for the same, and that thereafter, on notice to defendant, the plaintiff sold the rubber at a price less than the contract price, and that there was justly due and owing to the plaintiff from defendant the amount which the defendant promised and agreed to pay for the rubber delivered under said contract and the amount expended by plaintiff for the

account of the defendant, less the amount received for the rubber; and for that sum the plaintiff demanded judgment.

The answer denied the allegations of tender. The issue presented, therefore, was whether defendant had committed a breach of the contract in refusing to accept the rubber tendered to the defendant in October and November. By an amendment to the pleadings on the trial, the plaintiff further alleged that on or about the 9th day of October, 1909, the defendant wrongfully repudiated the said contract, and definitely notified the plaintiff that it would not thereafter perform the same. At the trial considerable testimony was taken as to these various tenders and as to the alleged repudiation of the contract. When the court came to submit the case to the jury, it was submitted wholly on the theory of the repudiation of the contract by the defendant, or what may be called an anticipatory breach of the contract in October. The court said to the jury:

"The insistence upon such demand invalidated the tender. There has been no tender of performance by the plaintiff in this case, nor is there one claimed. The plaintiff has withdrawn any claim that it did make a valid tender in this action, and the plaintiff could not then recover in this action unless it be shown that the defendant positively refused to carry out the contract, in which case the law makes an exception, so that, where one party to a contract positively refused to perform his part of a contract, the law does not require the other party to go through the idle form of offering to perform his part. An absolute refusal upon the part of one party to carry out the contract is termed a repudiation."

The court further charged the jury:

"If the jury believe that there was no positive refusal by the defendant to carry out the contract, the verdict must be for the defendant. If, on the other hand, the jury believe that there was a positive refusal to carry out the contract by the defendant, it shall then consider whether the plaintiff so regarded it and acted upon it, or whether it treated the contract as still in force."

So the recovery of the plaintiff depends upon this anticipatory breach of the contract by the defendant.

At the end of the case counsel for the defendant moved to dismiss the complaint, upon the ground that there was not evidence to sustain a finding of repudiation which would be clear and unmistakable. He also moved for the direction of a verdict, on the ground that there were no facts which would sustain a finding of repudiation or excuse a tender of performance on the part of the plaintiff. I think the motion to direct a verdict for the defendant should have been granted, on the ground that there was no express repudiation of the contract, and that plaintiff was not relieved from the necessity of making a tender as provided for in the contract to recover for a breach thereof. The evidence showed that there was objection made by the defendant to certain of the rubber included in the first delivery under the contract, and that plaintiff received back a portion of the rubber so delivered and submitted in its place other rubber, which apparently was accepted by the defendant. There was then some correspondence between the defendant and plaintiff, and also various negotiations.

The defendant insisted at one time upon its right to test the rubber in its laboratory before accepting it, and plaintiff insisted, on the

other hand, that defendant was obliged either to accept or reject the rubber in the warehouse, where it was stored. But, as I read this record, there was no evidence to show that at any time the defendant refused to accept the rubber which complied with the contract, and, after the so-called refusal, the defendant again and again offered to receive any rubber that the plaintiff would tender,' and accept it if it complied with the contract. None of these acts, which are now relied upon to sustain the claim of an anticipatory breach by the defendant, was relied upon by the plaintiff, for they afterwards made abortive tenders of the rubber, treated the contract as in full force and effect, and never, prior to the time that the amendment was made to the complaint, treated the acts of the defendant prior to the time of the refusal as an absolute and unequivocal breach of the contract. It is settled in this state that, for a party to such a contract to avail himself of such a repudiation, it must be adopted by the other party and acted upon by him. Becker v. Seggie, 139 App. Div. 463, 124 N. Y. Supp. 116; Ga Nun v. Palmer, 202 N. Y. 483, 96 N. E. 99, 36 L. R. A. (N. S.) 922.

It seems to me that, upon the whole evidence, the parties clearly understood the situation, and at no time was it claimed that the acts of the defendant constituted a breach of the contract, and, as I understand this record, there was no testimony that the defendant ever placed itself in the position of refusing to perform the contract or to accept any rubber offered to it that complied with the terms of the contract.

Therefore I think the verdict of the jury was not sustained by the evidence, and that the judgment and order should be reversed.