VOGELSTEIN et al. v. POPE METALS CO., Inc.

(Supreme Court, Trial Term, New York County. July 15, 1915.)

1. SALES ⊚⇒372—CONTRACT—ANTICIPATORY BREACH—ELECTION—NECESSITY.

Where plaintiff contracted to sell tin to defendant, the contract providing that defendant should put up margins under the rules of the New York Metal Exchange, and, upon defendant's notifying plaintiff that defendant considered the contract no longer effective, demanding the release of all margins deposited, plaintiff replied that defendant had no right to consider the contract no longer effective, and that the plaintiff considered it still in effect and would act accordingly, thereafter electing to declare the contract broken, not for defendant's breach in repudiating it, but on account of defendant's failure to deposit more margins, plaintiff could not sue as for an anticipatory breach by the defendant, since a party so suing must have elected to consider the contract as terminated by the breach.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1089; Dec. Dig. ⊚⇒372.]

2. SALES ⊚⇒62—CONTRACT—BREACH.

Where three separate contracts were made for the sale of tin for July, August, and September, each contract providing that the buyer should put up certain margins to cover fluctuations in the market under the rules of the New York Metal Exchange, and where the buyer had on deposit more than enough margins to cover the August and September contracts, the plaintiff could not claim a breach of such contracts by the buyer for the latter's refusal to deposit an additional amount of margin to cover an amount unpaid on the July contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179; Dec. Dig. ⊚⇒62.]

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CUSTOMS AND USAGES ☞14—CONTROL BY SPECIFIC CONTRACT.

 Where three separate contracts for the sale of tin, providing that the buyer should put up margins to cover fluctuations in the market according to the rules of the New York Metal Exchange, specifically provided that the margins should be considered as separately deposited, a custom of the Exchange that margins should be usually retained until all contracts were fulfilled was not binding upon the defendant.

 [Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 29; Dec. Dig. ☞14.]

4. SALES ☞196—CONTRACT PROVIDING FOR MARGIN—WAIVER OF DEPOSIT.

 Where defendant, by three separate contracts, contracted to buy tin from plaintiff, such contracts providing that defendant should put up margins to cover fluctuations in the market price under the rules of the New York Metal Exchange, and where, after deposit of margin by the defendant in bank, the plaintiff, while expressly refusing to admit that such deposit constituted "good margin," yet demanded only additional margin, plaintiff waived any defect in the form of deposit previously made as margin.

 [Ed. Note.—For other cases, see Sales, Cent. Dig. § 510; Dec. Dig. ☞196.]

Action by Ludwig Vogelstein and another against the Pope Metals Company, Incorporated. Judgment for plaintiffs.

Reeves & Todd, of New York City (Ely J. Blair, of New York City, of counsel), for plaintiffs.

Harry Edwards, of New York City, for defendant.

LEHMAN, J. The complaint herein sets forth three separate causes of action. The first cause of action is for a balance due upon the sale and delivery of certain tin under a written contract calling for the delivery of the tin during the month of July, 1913. The defendant has since the beginning of this action paid to the city chamberlain the agreed price of the tin, and subsequently, on the consent of the defendant, the city chamberlain paid this sum to the plaintiff. Upon the trial the defendant conceded that it still owed interest in the sum of $86.89 upon the amount of the agreed price, and consented that judgment be entered against it for that amount on the first cause of action. The real dispute between the parties is therefore under the second and third causes of action.

[1] It appears that on May 29, 1913, the plaintiff's assignor, hereinafter referred to as the plaintiff for convenience, agreed to sell to the defendant certain tin to be delivered in the months of July, August, and September. They signed separate contracts for each delivery. The first cause of action is brought upon the contract for July delivery; the second and third causes of action are brought for alleged anticipatory breaches of the contracts for August and September deliveries by reason of an alleged notification by the defendant that it would not accept the said goods or pay therefor or carry out the terms of said agreement upon his part. While the dispute between the parties at the present time involves a very considerable sum of money, the original trouble seems to have arisen only through an obstinate insistence on each part of what each conceived to be its rights in regard to matters of form. Under the contracts of sale

it was provided that either party might call for margins to meet variations in the market. It was also provided in the contracts that the special and general rules of the New York Metal Exchange should govern. The president of the defendant corporation had been president of that Exchange, but had resigned therefrom previous to the making of the contracts in suit because of some trouble with the Exchange. He undoubtedly was therefore acquainted with the rules of the Exchange, and in any event was bound by them, inasmuch as they were expressly made a part of the contract.

As soon as the plaintiffs began to call for margin, as they had a right to do under the contract, disputes arose as to the proper form of the call for margins and the proper form of the deposit of the margins under the rules. The plaintiffs first called for margins in one lump sum under all the contracts, while the defendant insisted that if it was under any obligation to deposit any margins, it must be under a separate call for margins for each delivery. The plaintiffs, apparently to avoid trouble, acquiesced in this claim and made the call in the form desired by the defendant. Thereupon on June 25th the defendant deposited in the Coal & Iron National Bank the full amount of the margins which the plaintiffs had a right to demand under the rule of the Exchange. This margin was deposited in the form of a number of certificates of deposit, made payable to the order of C. S. Trench (the plaintiff's assignor) or Pope Metals Company, "as the secretary of the New York Metal Exchange may indicate." The rules of the Exchange provide for this form of deposit of margins. The letter notifying the plaintiffs of this deposit states that it is "for the specific purpose detailed hereafter," viz.: Each certificate of deposit was for the purpose of margining either the July tin or the August tin or the September tin to a named price.

Under the contract of sale and the rules of the Exchange the right to demand additional margin as the price fluctuated was balanced by a right to demand a release of margins if the price fluctuated in the opposite direction. As a result the correspondence shows a constant demand for margins by one side and a constant demand for the release of margins by the other side. While the correspondence shows some acrimoniousness in regard to these matters, no question really material to this case arose until July 10th. On that day the defendant deposited in the Coal & Iron Bank as margins the sum of $6,902, but the certificate of deposit was made payable to the order of themselves or C. S. Trench & Co., "as their interests may appear," instead of "as the secretary of the New York Metal Exchange may direct," as required by the rules. The plaintiff protested against this form of deposit, but did not actually repudiate it. On the contrary, on July 11th they notified the bank not to make payment of the certificates without their signature. On July 25th they again notified the bank that if it paid "any of these certificates without our specific consent thereto you do so at your own risk," and they reiterated this notification on July 28th. Before those latter dates, however, the alleged repudiation of the contract by the defendant had already occurred. On July 10th the defendants had deposited the sum of $8,304 in the form

authorized by the rules, and this sum, together with the aforedescribed sum of $6,902, was the entire amount of margins which the plaintiff had a right to demand. This amount, in spite of subsequent disputes, was still on deposit on July 17th. On that date the plaintiffs delivered the tin called for by the July contracts, and on July 18th they demanded payment of the balance of the contract price, but the defendants refused to pay this amount until they had obtained a release of certificates of deposit aggregating the sum of $3,920. The plaintiffs did release this sum, but there were still various petty disputes between the parties, and the defendant refused to pay the balance due on the July contract. On July 23d these disputes culminated in two series of letters from the defendant, identical in form except that one series refers to the contract for August delivery and the second to the contract for September delivery. The defendant was at that time claiming that the plaintiffs should release to them the excess margins paid on the August and September contracts, and the first letter, sent on July 23d, was a demand for such release. The second letter stated:

"In the event of your failing to release the said moneys to us, we shall consider such failure a breach of the contract, and one which, in view of numerous similar breaches made by you on the said contract, is destructive of the contract."

The last letter states:

"We now give you formal notice that we consider the said contract of May 29th as no longer effective. We now demand the release of all margins deposited by us in our performance of said contract."

The plaintiff thereafter sold the tin which defendant had agreed to purchase under the rules of the Exchange and brings this action for the resultant deficiency in price, upon the theory that the defendant by these letters wrongfully repudiated its contracts. It seems to me, upon careful consideration, that the question of whether the defendant had at this time a right to regard the contracts as broken is immaterial.

"In order to sue upon an anticipatory breach, the party suing must elect to consider the contract as terminated by the breach." Rubber Trading Co. v. Manhattan Rubber Mfg. Co., 164 App. Div. 477, 150 N. Y. Supp. 17.

In this case it appears affirmatively that the plaintiff did not make such an election but, on the contrary, insisted that the contracts were still in existence. On the very date of the alleged anticipatory breach they wrote to the defendant:

"You have no right to consider the contract of May 29th as no longer effective. We consider it still in effect and will act accordingly."

On July 24th they demanded in writing further margin of $1,610 and stated:

"In the event of your failure so to deposit, we shall proceed to protect ourselves under the terms of these contracts in accordance with the rules and regulations of the New York Metal Exchange."

It was because of the defendant's failure to meet this demand, and not because of the alleged anticipatory breach, that the plaintiffs

sold the tin, under the rules of the Exchange, on July 25th, as conclusively appears from their letter of the same date, in which they state:

"Our yesterday's call for margin on contract T 5420, dated May 29, 1913, covering sale to you of 25 tons August tin at 46 cents, and on contract T 5421, dated May 29, 1913, covering sale to you of 50 tons September tin at 45.75 cents, not having been complied with in accordance with the rules and regulations of the New York Metal Exchange, we proceeded to sell out those contracts as in accord with the rules, and now beg to inclose herewith copy of letter from Mr. Carl Myer, dated July 25th, certifying that he has sold on to-day's call the 25 tons August at 39¾ and 50 tons September at 39⅝ cents. Herewith find inclosed our bill for the amount due, being difference between contract prices and sale prices above referred to."

It therefore affirmatively appears that the plaintiffs affirmatively elected not to consider the contract broken by defendant's repudiation, but thereafter proceeded under the contract to demand further margins, and themselves terminated the contract by sales under the breach for defendant's failure to comply with their demand.

[2] There remains only the question as to whether they had a right to terminate the contract for this reason. There is no dispute that the defendant on July 24th had on deposit with the Coal & Iron National Bank to the joint account of the parties an amount greater than the amount which the plaintiff had a right to demand as margins for the August and September contracts, but the plaintiffs claim that they had a right to regard this amount as diminished by the amount unpaid on the July contract. I can find no justification for this claim. The three contracts for July, August, and September delivery are not only evidenced by three instruments, but they are three separate contracts. This appears, I think, conclusively, not only from the pleadings, for the plaintiff has in his complaint set forth the breach of each contract as a separate cause of action, but also, from the practice of specifically depositing the margins separately, acquiesced in by the plaintiffs; from the separate notifications by the defendant that it regarded each contract as broken, the separate notification by the plaintiffs that it refused to regard each contract as terminated, and by the other acts of the parties in relation thereto.

[3] Even if under the custom of the Exchange margins were usually retained until all contracts were fulfilled, such custom could not be regarded as binding under the circumstances of this case. The margins were specifically to be considered as separately deposited, and the margins under one contract could not be offset against the other contracts.

[4] The plaintiffs also claim that the deposit of $6,902, which was not in the form required by the rules of the Exchange, was not a valid deposit of margin. The plaintiffs have, however, as shown above, claimed in their letter to the bank the right to retain this money as margin, but even in their letter of July 24th, while expressly refusing to admit that such deposit constitutes "good margin," yet they demand only additional margin, and I think clearly waive any defect in the form of the deposit previously made. It follows that the sale of the tin ordered by the plaintiffs on July 25th was not due to any antici-

patory breaches by the defendant, but was a termination by the plaintiffs themselves of the contracts made without legal right, but in mistaken reliance upon the correctness of their claim that they could regard the amount due upon the completed delivery of July tin as deducted from the amount specifically deposited to margin other separate contracts.

I therefore must dismiss the second and third causes of action, and direct judgment in favor of the plaintiffs in the sum of $86.89.