■ AG PROPERTIES OF KINGSTON, LLC, Respondent, v BESICORP-EMPIRE DEVELOPMENT COMPANY, LLC, Defendant and Third-Party Plaintiff-Appellant. CUDDER & FEDER & WORBY, LLP, Third-Party Defendant-Respondent. [788 NYS2d 694]—

Rose, J. Appeals (1) from an order of the Supreme Court (Bradley, J.), entered November 4, 2003 in Ulster County, which granted third-party defendant's motion for summary judgment

dismissing the third-party complaint, and (2) from an order of said court, entered March 5, 2004, which, inter alia, granted plaintiff's motion for summary judgment.

In January 2000, plaintiff and defendant executed an option agreement granting defendant the right to purchase 84 acres of commercial property for the purpose of developing a power plant and a manufacturing facility. Defendant's initial payment of $122,500 under the agreement was held in escrow by third-party defendant, Cudder & Feder & Worby, LLP (hereinafter CFW). CFW released the payment to plaintiff on February 15, 2000 after plaintiff orally communicated that it had waived its right to terminate the agreement under article II, and CFW concluded that all preconditions to release had been met.

On February 24, 2000, plaintiff wrote to defendant and asked for an extension of the agreement's deadline for plaintiff's engineer to evaluate the potential environmental impacts of defendant's projects. Despite plaintiff's earlier waiver and as part of what its counsel later described as a "bluff," the letter also stated that if defendant did not agree to extend the deadline, then the letter would constitute notice of plaintiff's termination of the agreement under article II. Defendant responded in writing on February 25, 2000, informing plaintiff that it declined to extend the deadline and asserting that plaintiff had no grounds for termination under article II of the agreement. Five weeks later, following a series of events that included a disputed meeting between the principals of the parties, defendant notified plaintiff on March 31, 2000 that it considered the agreement to have been terminated by plaintiff's February 24 letter and would make no further payments.

Plaintiff then commenced this action alleging that defendant's March 31, 2000 letter unilaterally terminated the agreement, entitling plaintiff to liquidated damages. Defendant answered, asserting that plaintiff's February 24, 2000 letter had terminated the agreement, and counterclaimed for return of its payment. Defendant also commenced a third-party action against CFW alleging a wrongful release of escrow funds. CFW moved for summary judgment dismissing defendant's third-party complaint, and Supreme Court granted the motion. Plaintiff then moved for summary judgment, arguing that because its attempt to terminate the agreement was an anticipatory breach and defendant had then elected to continue the agreement, defendant was precluded from later claiming that plaintiff had terminated the agreement. Supreme Court agreed and granted plaintiff's motion. Defendant now appeals.

Initially, defendant contends that Supreme Court improperly

granted CFW's motion because a condition precedent to release of the escrow funds, namely plaintiff's waiver of its right to terminate, was not satisfied. We disagree. CFW offered proof that plaintiff orally communicated its waiver to CFW. Since the agreement did not require the waiver to be in writing or communicated to defendant, defendant failed to raise a question of fact in response. Thus, Supreme Court properly found that all conditions for release of the funds had been met and granted CFW summary judgment.

We find merit, however, in defendant's argument that Supreme Court erred in holding, as a matter of law, that defendant elected to ignore the anticipatory breach and continue the agreement. Our analysis begins with plaintiff's February 24, 2000 letter, which it concedes constituted an anticipatory breach or repudiation because, as defendant pointed out in its February 25, 2000 letter, plaintiff had no grounds for termination under article II of the agreement. When confronted with this attempted termination, defendant had to choose between two options. It could either (1) treat the termination as an anticipatory breach, consider the agreement at an end and seek damages, or (2) ignore the anticipatory breach, continue to perform the agreement, wait to see if plaintiff would perform when required by the terms of the agreement and, if it did not do so, then bring suit on the subsequent breach (*see Strasbourger v Leerburger*, 233 NY 55, 59 [1922]; *Inter-Power of N.Y. v Niagara Mohawk Power Corp.*, 259 AD2d 932, 934 [1999], *lv denied* 93 NY2d 812 [1999]; *Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 266 [1995]). In determining which election the nonbreaching party has made, "the operative factor . . . is whether the non-breaching party has taken an action (or failed to take an action) that indicated to the breaching party that [it] had made an election" (*Bigda v Fischbach Corp.*, 898 F Supp 1004, 1013 [SD NY 1995], *affd* 101 F3d 108 [2d Cir 1996]).

In our view, defendant's February 25, 2000 letter is equivocal as to what election was being made in response to plaintiff's anticipatory breach. On the one hand, since defendant pointed out that plaintiff had no grounds for termination, the letter can be read as asserting that the termination was an anticipatory breach. On the other hand, since defendant did not expressly characterize plaintiff's attempted termination as a breach, the letter can be read as implying that defendant would treat the agreement as continuing. Supreme Court appears to have dealt with this ambiguity by attaching no significance to the February 25 letter and finding instead that an election to continue the agreement was established by defendant's subsequent ac-

tions. We, however, conclude that defendant succeeded in raising a question of fact as to whether it elected to proceed with the agreement.

During the five weeks between its February 25, 2000 letter and its March 31, 2000 letter, defendant made no payments, performed no action specified in the agreement itself and received no benefit under the agreement. These facts suggest that defendant did not elect to continue the agreement (*cf. id.* at 1011-1012, 1013). However, in plaintiff's moving papers, its managing member, Alan Ginsberg, avers that, on or about March 7, 2000, he met with defendant's owner, Michael Zinn, and they "agreed to cooperate, work together and 'get the deal done.' " While this suggests that both parties considered the agreement to be continuing, Zinn avers in his affidavit that, at the same meeting, he and Ginsberg acknowledged that the agreement was terminated, but Zinn also expressed the hope that ·defendant could alleviate plaintiff's concerns and rekindle the parties' contractual relationship in the future.

In these circumstances, the actions taken by defendant prior to Zinn's meeting with Ginsberg on March 7, 2000 did not indicate an election of remedies, but only a willingness to proceed with the agreement in the event that plaintiff agreed to retract its repudiation. Where, as here, a contract has been totally renounced, "[t]he law . . . has refused to regard a continued willingness to receive performance [from the repudiator] as more than an indication that if the repudiator will withdraw the repudiation, but not otherwise, the contract may proceed" (23 Williston, Contracts § 63:53, at 662-663 [4th ed]; *see Rubber Trading Co. v Manhattan Rubber Mfg. Co.*, 164 App Div 477, 479-480 [1914], *revd on other grounds* 221 NY 120 [1917]; *see also DeForest Radio Tel. & Tel. Co. v Triangle Radio Supply Co.*, 243 NY 283, 292-293 [1926] [holding that where a nonrepudiating party affords the repudiating party an opportunity to repent, but it does not do so, the nonrepudiating party's subsequent failure to perform is not a breach]; Restatement [Second] Contracts § 257 ["The injured party does not change the effect of a repudiation by urging the repudiator to perform in spite of his repudiation or to retract his repudiation"]).

As a result, the decisive issue is what occurred at the meeting between Zinn and Ginsberg. If established at trial, the facts related by Zinn would support a finding that defendant was willing to continue the agreement if plaintiff retracted its repudiation until that meeting, at which time plaintiff refused to do so and defendant accepted the agreement's termination. If, ·on the

other hand, Zinn's account of the meeting were found not to be credible, and Ginsberg's account that he effectively retracted the repudiation is believed instead, then the facts would support findings that both parties thereafter treated the agreement as continuing and defendant's March 31, 2000 letter constituted a unilateral termination. Accordingly, we find that there is a material question of fact due to the conflicting accounts of the March 7, 2000 meeting which precludes the award of summary judgment to plaintiff (*see Bykowsky v Eskenazi*, 2 AD3d 115, 115-116 [2003]; *Schaufler v Mengel, Metzger, Barr & Co.*, 296 AD2d 742, 743 [2002]; *cf. Bigda v Fischbach Corp., supra* at 1012-1013).

Cardona, P.J., Crew III, Peters and Carpinello, JJ., concur. Ordered that the order entered November 4, 2003 is affirmed, without costs. Ordered that the order entered March 5, 2004 is reversed, on the law, without costs, and motion denied.