(139 App. Div. 463.)

## BECKER v. SEGGIE.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

CONTRACTS (§ 316*)—ACTION FOR BREACH—RIGHT OF ACTION—PERFORMANCE BY PLAINTIFF.

> Where plaintiff and defendant made an agreement whereby a contract held by defendant for the purchase of land was to be for their joint benefit, the land to be resold when a certain profit could be procured, and defendant told plaintiff before the time for the final payment that he would not continue the contract, whereupon plaintiff wrote him saying that he was then ready, and would be on the date for performance, to take title to the land, but at such date he failed to be at the place for payment or to make any offer of payment, he is not entitled to recover of defendant for breach of the contract, the anticipatory breach being waived by his insistence on continuing the contract in force and he not having performed at the time therefor.

> [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1481; Dec. Dig. § 316.*]

Appeal from Trial Term, New York County.

Action by Louis Becker against William Seggie. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 110 App. Div. 892, 96 N. Y. Supp. 1114.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Adolph & Henry Bloch (Charles A. Travis, of counsel, and George W. Smyth, on the brief), for appellant.

Ferriss, Roeser & Storck (John E. Roeser, of counsel), for respondent.

CLARKE, J. The complaint alleges that the defendant on February 28, 1905, entered into two separate contracts in writing with one John O. Baker, whereby defendant agreed to purchase two separate parcels of real estate in the city of New York for $82,500 and $6,500, respectively, and paid $3,500 upon the purchase price, and agreed to pay the balance on April 28, 1905, upon the delivery of the deed of said property, by paying $14,300 in cash and giving back purchase-money mortgages on the property for the balance of $71,200; that the plaintiff acted as broker for the said Baker, and was entitled upon the making of said contract to a commission of 1 per cent. upon the purchase price thereof, amounting to $825 and $65, respectively; that the commission of $65 was then paid to plaintiff by said Baker; that plaintiff at the defendant's request, and upon his representation that the said contracts would be fulfilled, agreed with Baker to postpone the payment of his commission of $825 until the title should close under the said contract, and that said Baker, in consideration of such agreement, accepted a smaller payment than he otherwise would. That after the said contracts had been entered into with the said Baker and on the 28th of February, 1905, plaintiff and defendant entered into an agreement whereby they agreed that the purchase of said property

should be for their joint account, and that they would share equally in the payment of the purchase price thereof, and in any and all expenses in connection therewith, and in any and all losses or profits upon a resale of said property and in any enhancement of the value of said property, and agreed to sell said property as soon as a profit of $7,000 could be realized by a sale thereof, and that such profit should belong to them jointly, and be divided equally between them, and be subject to a deduction of all expenses which either of them should incur in furtherance of their joint venture, and that the commission of $825 to be paid to plaintiff by the said Baker was the sole property of the plaintiff; that in accordance with the said agreement between plaintiff and defendant, plaintiff paid to the defendant the sum of $1,750, half of the amount which the defendant had paid to Baker, and agreed that each should pay the further sum of $7,150 each at the time for closing title, and that the defendant should take title to said two parcels in his own name unless the property could be sold before that time at the profit aforesaid; that defendant, upon receipt of said $7,150, gave to the plaintiff two instruments in writing transferring to the plaintiff one-half interest of all the defendant's right, title, and interest in and to the aforesaid contracts and the aforesaid property, and any rent, profit and advantage thereunder whatsoever; that thereafter the plaintiff and defendant entered upon the performance of the said agreement and offered the property for sale; that the expense of advertising was paid by the plaintiff and amounted to $47.-04; that the plaintiff laid out the further sum of $50 for one-half of the legal expense of organizing a corporation to take over the two said parcels in furtherance of their joint venture; that the plaintiff expended much time, labor, and money, amounting to about $600 for the purpose of furthering the joint venture in the efforts to dispose of said two parcels at a profit, but no sale of said property was effected; that thereafter and before, as well as at the time fixed for closing title, the defendant wrongfully refused to pay his share of the balance of the purchase money due upon said contracts, and wrongfully defaulted in the performance of said contracts with said Baker; that Baker was ready, able, and willing to perform his part of said contracts with defendant, and the plaintiff was ready, able, and willing to pay his share of the balance of the purchase money, and gave due notice to defendant that he was ready to pay his share of the balance of the purchase money as agreed, and would be ready to close the title as aforesaid with said Baker; that defendant, before and after such notice, informed plaintiff that he would not take title to such property and would default; that by reason of the failure of the defendant to perform his agreement with the plaintiff, he was damaged in the sum of $10,000 by reason of the enhancement of the value of said property and the loss of his share of the prospective profits in any resale thereof, by the loss of $1,750 paid by plaintiff to defendant, and interest thereon from the 28th of February, 1905, by the loss of money laid out and expended by the plaintiff for legal fees in connection with said property, and also for the formation and incorporation of the said realty company, and for advertising and otherwise offering said property

for sale, by the loss of his commission of $825 payable on the 28th day of April, 1905, and interest thereon, and by the loss of time and labor and money otherwise expended by plaintiff in the effort to further the joint venture. Therefore, he demanded judgment for $10,000. Upon the trial plaintiff had a verdict for $1,750, one-half of the down payment paid by the plaintiff to the defendant for one-half interest in the contract.

The plaintiff was a real estate broker and had been interested in transactions in real estate in what is known as the "Ft. Washington section." The defendant was a shoe dealer. At or about the time of the transactions under consideration there existed what is known as a "boom" in Ft. Washington property. It is apparent from the testimony that the plaintiff represented to the defendant that a profit could be made in dealing in such property by entering into contracts for the purchase thereof, and by selling said contracts at an advance before the time of closing. It is evident that neither party intended to take title. They hoped, within the 60 days between the date of the contract and the time fixed for closing, to sell their contract for a profit which, as is clear from the complaint, they hoped would amount to about $7,000, and they made efforts to carry out their scheme by selling the contract. Unfortunately for them they seem to have bought at the top of the market and were unable to accomplish their desire. The plaintiff himself testified:

"Our sole object was to dispose of these two contracts before they matured if we could."

Plaintiff testified that on the 17th of April, in response to a message from the defendant, he went to his office:

"I asked him what he wanted about the building loan proposition. He said that there was a man named Kafka going to call later in the afternoon, who he believed would be in a good condition to procure for us a building loan of $300,000, and build on the block front. I told Mr. Seggie that I was not satisfied to sign any application for a building loan, that I didn't intend to build on the property, and that it was entirely outside of our agreement. * * * I told him I wouldn't go into it; didn't intend to build on the property. He told me, 'Well, if you don't want to do this—build on the property—why, I shall give up my interest in both these contracts, and I shall not take title.' I told him, 'Do you mean to say that you are going to lose all the money that you have put down on both those contracts?' He says, 'Yes.' I asked him, 'How about mine?' 'Yours goes, too.' And words were getting pretty warm at that time; and I says, 'Well, Mr. Seggie, if you don't take title to both these properties, so that you can give me your deeds for one-half interest, I shall hold you for all damages, my deposit money that I paid you, and all my other expenses.' "

On April 25th the plaintiff wrote to the defendant:

"Confirming my conversation of the 17th instant with you, when I called at your above place with my bookkeeper, I beg to state that I am now and will be ready on the 28th to take title to the extent of my one-half interest in both the Wadsworth Avenue block front and the Broadway triangular plot."

At the time of closing, neither the plaintiff nor the defendant appeared or tendered performance on their part to Baker, the vendor.

The learned court charged as follows:

"If you reach the conclusion on the evidence that the contract was made between Becker and Seggie, and that Becker performed his part of the contract according to its terms up to the 17th day of April, 1905, and that on that day Mr. Seggie breached the contract—repudiated it—and declared that he would not fulfill or perform it, and you find all these facts on a fair preponderance of the credible evidence, then the plaintiff may recover in this action against the defendant; otherwise, not. It is in evidence that Becker, after the 17th of April, 1905, did not tender any moneys to Seggie to close the contract with, and that he did not attend at the place of closing on the 27th or 28th of April, 1905, and that he did not tender the whole or his share of the purchase to the seller, Baker, at the time of closing. I charge you, gentlemen of the jury, as a matter of law, that if you find that the contract was made between Seggie and Becker, as claimed on behalf of the plaintiff, and that Becker performed every part of the contract on his part to be performed, up to and including the 17th day of April, and that on that day Seggie breached that contract, then it was not incumbent or obligatory on the part of the plaintiff Becker to make any other or further tender of performance, nor was he obliged to attend at or upon the closing of the contract between Baker and Seggie"—

to which charge the defendant duly excepted and asked the court to charge:

"That if the jury shall find that there was a waiver on that day by Seggie of the performance of Becker's part of the duty on April 17, 1905, that said waiver, if it occurred, was nullified as a matter of law by Becker's letter to Seggie of April 25, 1905, notifying him that he elected to waive that waiver, and that he would be ready at the time and place to close this transaction, and that therefore the obligation still rested upon the plaintiff to tender to Mr. Seggie his share of the balance of the purchase price"—

which was refused, and an exception taken.

It seems to me that the verdict of the jury, which must have been based upon the contention that there was a contract between the parties under which the defendant should take the title to the properties in question, was against the weight of evidence; that the real transaction was simply an agreement to take a contract with the hope and expectation of being able to dispose of it at a profit before the time for completion arrived; that it was a joint venture; and that as it is conceded that both parties did all they could to dispose of this contract without success, and as the object thereof failed by their inability to dispose of it, each must bear the loss. If, however, this is not so, then I think that the charge of the judge and the refusal to charge as requested was erroneous. If, as the complaint alleges, the plaintiff and defendant entered into an agreement whereby they agreed that the purchase of said properties should be for their joint account, and that they would share equally in the payment of the purchase price thereof, and, as the plaintiff testified, "The first time I made him the proposition that I would go in with him on this joint venture, and put up half the purchase price and share half the profits," then it was the obligation and the duty of the plaintiff to allege and prove a tender upon his part and readiness to perform by the payment of half the purchase money upon the day of closing. This he concedes that he did not do for he did not even attend at the time and place appointed for such closing. He seeks to avoid by his testimony that on the 17th of April the defendant notified him that he would not take the title and would not put up his half of the purchase price.

This is to claim an anticipatory breach, and if he had stood upon it he might have been justified in claiming such a waiver on the defendant's part as excused him from further action upon his own part. But the difficulty is that he refused to accept such waiver and notified the defendant in writing:

"I beg to state that I am now and will be ready on the 28th to take title to the extent of my half interest."

The rule was stated by Lord Esher in Johnstone v. Milling, 55 L. J. (N. S.) Q. B. 162:

"That where there has been an anticipatory breach of contract, the repudiation of the contract or total refusal to perform it before the time for performance has arrived does not of itself amount to a breach of contract, but it may be acted on by the other party, and adopted by him as a rescission of the contract. That is to say, when one party refuses by anticipation to perform the contract, that is equivalent to a declaration by him that he thereby rescinds the contract so far as he can. But he cannot rescind it by himself. * * * The other party may elect to adopt it as a rescission by acting upon it, and by treating the contract as at an end except for the purpose of bringing an action upon it. He cannot, however, act on the contract as existing for other purposes, and at the same time bring an action upon it as if it had been rescinded. But he need not adopt the repudiation; he may elect not to do so, and may wait for the time when the contract ought to be performed, and when the breach would naturally occur."

In Zuck v. McClure, 98 Pa. 541, it was held:

"A mere notice of an intended breach is not of itself a breach of the contract. It may become so if accepted and acted upon by the other party. If the defendant had accepted the plaintiff's notice of a breach contained in his letter of October 19th, and acted upon it, there would plainly have been a breach of the contract."

In Howard v. Daly, 61 N. Y. 362, 19 Am. Rep. 285, the court, citing Chief Justice Cockburn's language in the court of Exchequer Chamber in Frost v. Knight, L. R. 7 Exch. 1111:

"The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive, for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstance which would justify him in declining to complete it."

Judge Wallace in Marks v. Van Eeghen, 85 Fed. 855, 30 C. C. A. 209, upon an examination of many cases, states the rule to be: "Where one party to an executory contract renounces it without cause, before the time for performing it has elapsed, he authorizes the other party to treat it as terminated, without prejudice to a right of action for damages, and if the latter elects to treat the contract as terminated, his right of action accrues at once. The latter, however, must elect whether he will treat the contract as terminated or as still existing, and if he does not do so his right of action for a breach can only rest upon the refusal of the other party to perform the existing contract according to its terms."

In Bernstein v. Meech, 130 N. Y. 354, 29 N. E. 255, it was held:

"But whatever view may have been taken of the right of the defendants to treat the contract for the purposes of its performance as at an end, and to act upon that assumption when they received the plaintiff's letter, they disposed of that question by their letter to him. By this it appeared that the defendants elected to keep the contract in force for the purposes for which it was made. This operated alike upon the rights of both parties, and the plaintiff was justified in so understanding it. In that view the contract was kept alive until the time arrived for performance, and the obligations of the defendants no less than those of the plaintiff for that purpose remained effectual."

In the case at bar the plaintiff distinctly notified the defendant that he refused to accept his repudiation of the contract and would hold him to his performance and would be ready himself to perform, thereby nullifying the alleged anticipatory breach. His own promise to pay one-half of the purchase price was to be performed concurrently with the alleged promise of the defendant to pay his half of the purchase price, and, in order to recover damages for defendant's breach, the plaintiff was required to show strict performance upon his part. This he failed to do. The instruction, therefore, to the jury, of the law of the case was error, even assuming upon the facts that the plaintiff had established the contract upon which he sued.

The judgment and order appealed from should therefore be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.