James Hadfield, Respondent, *v.* Joseph Colter and Thomas S. Bernie, Doing Business under the Firm Name and Style of Colter & Bernie, Appellants.

(Supreme Court, Appellate Term, First Department, May, 1918.)

Sales — action on — trial — appeal — new trial — Personal Property Law, § 126(2) as amended by chap. 571, Laws of 1911.

Under an accepted order from defendants, plaintiff agreed to deliver 4,000 dozen pairs of hose at a fixed price, deliveries to be made during October, November and December, 1916,

and, under a further order for an equal quantity for a fixed price, the goods were to be delivered in December, 1916, and prior to January 15, 1917, "after the completion of other shipments" which plaintiff had agreed to make to defendants. Certain of the goods were shipped in October, 1916, on account of the first order and on the thirtieth of that month there was a shipment aggregating $1,259. Including said shipment and other deliveries on account of the first order there still remained 2,300 pair to be delivered and no goods were ever shipped under the second order. In an action to recover the contract price for the October shipment it appeared that coincidently therewith plaintiff wrote to defendants that owing to the high price of yarn all future orders would be filled at an increase of twenty per cent over the contract price; that it would be impossible to fill orders at the old price and that it would not work on any more of defendants' order until further notice. In answer to a letter from defendants calling for an immediate settlement of the matter plaintiff replied that it would not change its attitude and that unless defendants gave notice forthwith that they would pay the higher prices plaintiff would fill orders for other customers at the advanced rate. The next day defendants answered that they would insist that the agreement be kept by the delivery of every dozen due, at the prices and terms of the orders, and if necessary they would use all proper methods to protect their rights. This and the correspondence which followed left no doubt that while plaintiff would hold to its repudiation of the contract it would insist upon defendants' strict compliance with the letter of their obligation thereunder. *Held,* that as under section 126(2) of the Sales Law (Personal Property Law, as amended by chapter 571 of the Laws of 1911) it was a question of fact whether the failure of the defendants to pay for the October shipment justified plaintiff in refusing to continue further deliveries under the contract an instruction to the jury that, as matter of law, such failure did justify such refusal, was erroneous, and inasmuch as the facts involved were not in dispute it was equivalent to an instruction to the jury to find a verdict for plaintiff.

In default of a motion by defendants for the direction of a verdict the court, on appeal from a judgment in favor of plaintiff entered on a verdict, will reverse said judgment and grant a new trial.

Appellate Term, First Department, May, 1918.  [Vol. 103.

Appeal by defendants from a judgment of the City Court of the city of New York in favor of plaintiff entered upon the verdict of a jury.

Sumner B. Stiles, for appellants.

Bullowa & Bullowa (Ferdinand E. M. Bullowa, Emilee M. Bullowa, of counsel), for respondent.

Bijur, J. Plaintiff sues for the contract price of goods sold and delivered by his assignor (Hadfield Hosiery Company, a Pennsylvania corporation), which for the purpose of convenience I shall hereinafter designate as plaintiff.

Plaintiff, under a number of accepted orders received from defendants during the summer of 1916, had agreed to deliver to defendants various quantities of stockings. The particular orders involved in the present controversy are known as Nos. 8 and 19. No. 8 called for the delivery of 4,000 dozen pairs of hose at a fixed price with certain discounts for payment in ten or thirty days respectively. Deliveries were provided to be made "during the months of October, November and December, 1916." Order No. 19 was for an equal quantity at a fixed price, the goods to be delivered " in December, 1916, and prior to January 15, 1917, after the completion of other shipments " which plaintiff had agreed to make to defendants. During the early part of October plaintiff shipped some goods to defendants on account of order No. 8, and on October thirtieth made a shipment aggregating $1,259, which is the subject matter of the present suit. Including that shipment plaintiff had delivered to defendants some 1,700 dozen pair of hose on account of order No. 8, leaving over 2,300 dozen pair still to be delivered. No goods were ever shipped under order No. 19.

On October thirtieth, and coincidently with the shipment of that date under order No. 8, plaintiff wrote defendants that owing to the high price for yarn all future orders would be billed at an increase of about twenty per cent over the price specified in their contract, closing as follows:

" It will be impossible for us to fill the orders at the old prices   *   *   *.   We will not work on any more of your orders until further notice."

Immediately upon receipt of this order defendants replied:

" Your amazing letter of October 30th is to hand *   *   *.   In view of the very serious consequences that will follow in the event that you do not ship our goods we must request your Mr. Hadfield or Mr. Vetter call on us immediately and settle this matter."

On November first plaintiff replied that these gentlemen could not call, but that plaintiff would not change its attitude, and unless defendants notified it forthwith that they would pay the higher prices it would fill orders for other customers at the advanced rate.   On November second defendants answered:

" We insist upon you keeping your agreement and delivering every dozen due us at the prices and terms of our orders. * * * Please understand our position clearly, namely, that you are under every moral and legal obligation to complete our orders as stated, and we if necessary shall use all proper methods to protect our rights."

On the same day defendants wrote another letter, inclosing a check in payment of some earlier invoices (i. e., of October twenty-fourth), adding:

" Please note that our attorney advises us that we must not send you any more money until you positively agree in writing that you will complete our

orders at exactly the prices and terms upon which you accepted them.''

A number of interviews between the parties followed, the purport of which was substantially the same as that of the letters.

On November twenty-ninth plaintiff wrote as follows:

'' We received your check for the last two cases that we shipped and wish to thank you for the same.

'' Your account amounting to $1,259.00 is due on Friday and we will expect a check by return mail for the full amount. We have been shipping goods to you on your contract and we now have one case packed and ready for shipment and have started another. The case that is ready to be shipped will not go until we receive your check for the money that is due. If we do not receive your check we will not fill any more orders on your contract.''

On December first defendants replied:

'' Your letter of November 29th is to hand and we stand ready to-day to pay your bills when you give us your positive guarantee that you will complete your contract with us by delivering the hosiery on the orders which you accepted and agreed to fill. When Mr. Vetter and Mr. Hadfield called on us about three weeks ago we then offered you our check on condition that you guarantee to deliver our goods.    *    *    *

'' You say the bills were due today, but we say they were due November 10, and we offered you our check for them when you were here November 9. The two bills you sent November 21st were paid November 28th. This proves two things conclusively: First, That you had no fear about our credit, although we had in our hands some twelve hundred dollars, and second, that you are not justified in threatening not to fill the balance of the contract because you positively

know we are holding back the money awaiting your decision to complete the contract.

" Please take notice that the net amount of your bills is held ready for you at a moment's notice in our bank when you give proof that you will perform your contract.

" Or, further, as evidence of our good faith we offer to deposit the net amount due in a New York or Philadelphia bank to be agreed upon, under the condition that the money shall be paid to you only on the completion of the contract.

" If this liberal offer is not satisfactory and you persist in holding back our shipments you will compel us to go out into the open market and procure the goods at to-day's price and charge the difference to your account.

" This is positively the only way we will settle this matter."

On December eleventh defendants wrote plaintiff inclosing a memorandum of all orders unfilled and offering to pay a slight advance over the contract price on the goods still undelivered—

" On condition that you leave $500 with us as a guarantee for the completion of the orders on this basis.  *  *  *

" In regard to the money which we are holding for you, we intend paying you interest from the time the original bill was due  *  *  *.  The proposition mentioned in this letter is positively in your hands to say yes or no."

On December sixteenth plaintiff wrote:

"Answering your letter of the 11th inst., we say NO.

" Unless payments are made immediately according to original agreement we will cancel existing orders and sue for balance due."

On December eighteenth defendants wrote plaintiff inclosing a check for the amount of the invoice of October thirtieth (here in suit), indorsed as follows:

" This check will be honored by our bank only on condition that John Hadfield, president and David Vetter, treasurer of Hadfield Hosiery Co. endorse it and by so doing they agree that all of our orders *as per memo sent to them in our letter of December* 11 will be shipped to us and billed to us at the original prices accepted namely $1.02½, $1.05, $1.10 on or before March 15, 1917."

On December twentieth plaintiff replied calling attention to an error or oversight in the amount of the discount deducted in this check, and adding:

" We do not admit any right in you to attach conditions when you pay us money due for goods sold and delivered in accordance with orders received from you.

" When we delivered our goods to you at the agreed upon price and within the agreed upon time we then became entitled legally and morally to the payment of the agreed upon price."

The check was deposited by plaintiff, but not paid because not indorsed in conformity with the memorandum made thereon, and plaintiff had the same protested.

The final letter of December twenty-first was thereupon written by defendants referring to this incident and concluding:

" By letter dated October 30th, 1916, you in effect advised us that you would make no further shipments to us unless we agreed to pay you prices largely in excess of the prices specified in our orders which were accepted by you.    *     *     *    Since receipt of this letter we have consistently insisted upon your performance of your agreements with us, but you have at all times

refused to give us any assurance whatever that you were ready or willing to perform your contract obligations."

Then after referring to their attempts at an adjustment of the difficulty defendants added:

" We have at all times been ready to promptly pay the balance of the account upon receiving proper assurance of your willingness to complete your contract. Inasmuch as you have refused to recede from the position taken in your letter of October 30th, we must regard your action as a repudiation of your contracts with us. * * * Inasmuch as these damages will far exceed the amount due for goods which you have already delivered, we must refuse to make any further payments to you, and will look to you for the payment of whatever damages we may suffer in excess of what is unpaid for goods already delivered."

Defendants' counterclaim for the damages on the two contracts was shown to aggregate $2,354. Plaintiff's claim for the invoice of October thirtieth was, with interest, $1,268, for which amount the jury returned a verdict. It further appeared that during the time of this correspondence some shipments had been made by plaintiff to defendants, one of them on December second being of 100 dozen pair of goods covered by order No. 8. For this invoice defendants made immediate payment.

The learned judge below, after rehearsing these facts to the jury, called their attention to the character of the contract which provided for shipments in installments and separate payment for each installment and designated it as " a divisible order." He then added that ". failure upon their (defendants') part to pay the bills as due *was a default which would justify the plaintiff in refusing to continue further deliveries thereunder*." He then read to the jury an

31

extract from *Roehm* v. *Horst,* 178 U. S. 1, to the effect
that in a case of anticipatory breach by the promisor
" The promisee, if he pleases, may treat the notice of
intention (not to perform) as inoperative, and await
the time when the contract is to be executed, and then
hold the other party responsible for all the conse-
quences of non-performance; but in that case he keeps
the contract alive for the benefit of the other party as
well as his own; he remains subject to all his own obli-
gations and liabilities under it, and enables the
other party not only to complete the contract, if so
advised, notwithstanding his previous repudiation of
it, but also to take advantage of any supervening cir-
cumstance which would justify him in declining to
complete it."

He then described the plaintiff's position in this
controversy as being that it had indeed repudiated
the contract but that the defendants " did not agree
to the cancellation, but on the other hand repudiated
the right of the plaintiff to cancel their contract," and
that consequently " the defendants continued the
contract and during its continuance made default in
the payment of the amount sued for, and refused to
make that payment so due except upon new conditions
different from that required in the contract, that the
defendants became in default and are liable, and that
there was no breach on the part of the plaintiff's
assignor."

He defined the defendants' position to be that the
contract was breached on the thirtieth of October, that
they used their best endeavors to avoid a controversy
with respect to the breach, that they did not waive it
and that " by reason thereof they suffered damage
before any default upon their part justified the plain-
tiff in declaring the contract breached because of their
default."

He further left to the jury " the disputed questions of fact in this case," namely, " first, did the plaintiff before default on the part of the defendants breach this contract, and while it is true that the plaintiff attempted on October 30th to breach that contract, nevertheless, the defendants refused to allow the contract to be breached, and asserted as late as its latest letter that its whole endeavor was to compel through all the period of the controversy the plaintiff's assignor to live up to this contract and to perform. *I have told you that if the defendants so acted they kept the contract alive, not alone for their own benefit but for the benefit of the plaintiff, and that if during the time the contract was alive, defendants defaulted with respect thereto, then the plaintiff's assignor was justified in refusing to make further deliveries and there can be no liability under these counterclaims.*

" On the other hand, if it was the fault of the plaintiff's assignor, and before default on the part of the defendants the plaintiff's assignor breached the contract, and all that took place subsequent to the letter of October 30th was simply discussion, and not assertion of right, then the defendants will be entitled to offset any damage that they suffered by reason of the breach of the contract by the plaintiff's assignor."

No exception was taken by defendants' counsel to the charge itself which covers twenty pages of the printed record, and which was painstaking and necessarily detailed.

At the close of the charge, however, defendants' counsel did ask the court to charge as follows:

" Defendants' Counsel: I ask your Honor to charge that although it is the law that in order to take advantage of an anticipatory breach of a contract the party suing must elect so to do; there is no particular time within which he must make that election.

Appellate Term, First Department, May, 1918.    [Vol. 103.

" The Court: I so charge, but in connection therewith if he does not elect to accept that breach of the contract, and he defaults in the meantime with respect to any provision thereof, the other side have a right to act upon his default.

" Defendants' Counsel: Your Honor will allow me an exception to the modification.

" The Court: Yes.

" Defendants' Counsel: I ask your Honor to charge that an offer or repeated offer by the defendants in this case to allow the plaintiff to perform their contract is not necessarily to be considered as an election by them, but must be viewed in the light of all the circumstances.

" The Court: I refuse to charge in the language requested, but I leave the proposition to the jury to determine the effect of these efforts as to whether or not the defendants were asserting a right that the contract should be continued and was continued as far as they are concerned.

" Defendants' Counsel: May I have an exception?

" The Court: Yes."

Although the request to charge that " there is *no particular* time within which he (the promisee) must make that election " (namely, to accept the anticipatory breach) was approved, the modification virtually nullified it and the amplification contained a still further error as I shall point out. Thus the learned judge said: " But in connection therewith *if he does not elect* to accept that breach of the contract, and he defaults in the meantime with respect to any provision thereof, the other side have a right to act upon his default."

As applied to the facts in this case, there is a determinative difference between " not electing to accept " and " electing not to accept." If it be true, as it is,

that the promisee is not bound to exercise his election " within a particular time " — that is if. he has a reasonable time to make that election — then it cannot be correct to say merely that " if he does not elect " but defaults in the meantime the other side has a right to act upon his default.  It may be true that *if he does not elect within a reasonable time* to accept the breach and it is surely correct to say that *if he elects* at any time *not* to accept the breach the contract is thereafter restored to full effect.

Plaintiff-respondent's counsel has himself cited and quoted from cases which, if carefully read, make the distinction perfectly clear.  Thus he quotes from the opinion of Cardozo, J., in *Rubber Trading Co.* v. *Manhattan Rubber Mfg. Co.*, 221 N. Y. 120, 126, as follows: " The plaintiff did not rescind for the defendants' anticipatory breach.   *   *   *   *It chose to keep the contract alive* in spite of anything that had gone before.  But a contract, *thus preserved,* remains alive as much for the benefit of the buyer as for the benefit of the seller (citing cases).  Each may take advantage of events which supervene."

It is apparent that the case was one in which the promisee had affirmatively " *chosen to keep the contract alive.*"  This is emphasized by preceding passages' in the opinion; for instance, at page 125, " The plaintiff (the party who claimed that the defendant had made an anticipatory breach) learned on October 9th that the defendant insisted upon the right of inspection at the factory.  With that knowledge, *it asserted the continued existence of the contract.*"

The same element of an assertion or an affirmative act of election to reject the repudiation and keep the contract alive will be found in all the cases in which it has been determined that the contract remained alive and that the party who had made the anticipatory

breach was entitled to insist upon further performance by the other party. See for instance *Becker* v. *Seggie,* 139 App. Div. 463, 469; *Lehmaier* v. *Standard S. & T. Co.,* 123 id. 431, 436; *Marks* v. *Van Eeghen,* 85 Fed. Repr. 853; *Bernstein* v. *Meech,* 130 N. Y. 354, 358.

On the other hand, it has been held that mere efforts on the part of the innocent party to persuade the promisor who repudiates his agreement to reject that repudiation and proceed honorably to the performance of his agreement do not, when the efforts finally prove unsuccessful, involve a waiver of the innocent party's right to avail of the anticipatory breach. *Canda* v. *Wick,* 100 N. Y. 127. See, also, *Riendeau* v. *Bullock,* 147 id. 269. In this connection it should be recalled that the learned judge below, in his main charge, had said, in instructing the jury as to "*the disputed questions of fact in this case;*" "*I have told you that if the defendants so acted they kept the contract alive * * *.*" Yet in *Canda* v. *Wick, supra,* the Court of Appeals said (at pp. 131, 132): "The warning given by the plaintiffs to the defendant, that his refusal would absolve them from any obligation on the contract, was not, as is claimed, equivalent to an assertion of a right on their part to regard the contract as still subsisting and executory. * * * The right of action having accrued from the transaction of September 21st, *it was not waived as matter of law* by a subsequent offer on the part of the plaintiffs to furnish the brick, which was not accepted by the defendant until the advance in the market had materially changed the situation." The error of the charge in this respect was accentuated by the court's refusal to charge defendant's second request. A rule that the honest promisee must at his peril refrain from endeavors to persuade the defaulting promisor to live up to his agreement and thus perform what the

promisee has a right to demand, or that during the period of these meritorious efforts the promisee must faithfully perform the agreement which the promisor has repudiated, would place a premium upon faithlessness and a penalty upon honorable business dealings. It would enable the dishonorable contractor to set a trap for him who observes his obligations.

The second clause of the court's modification of defendants' counsel's first request instructed the jury " that if the promisee (in this case the defendants) defaults in the meantime *with respect to any provision* thereof (namely, the contract), the other side has a right to act upon his default." While it is strictly true that if one party to a contract defaults with respect to any provision thereof the other party " has a right to act upon his default " (in the sense that he may insist upon some measure of redress), that was not the meaning of this charge; for it was not questioned that plaintiff was entitled to payment for the invoice of October thirtieth which defendants had failed to pay, indeed, it was admitted at the outset of the trial. The modification in the charge must be read in connection with the original charge in which the court said: " I have told you    *    *    *    that if during the time the contract was alive defendants defaulted with respect thereto, then the plaintiff *was justified in refusing to make further deliveries and there can be no liability under these counterclaims."* The charge and its modification, therefore, clearly instructed the jury that the effect of defendants' failure to make payment for the invoice of October thirtieth was to entitle the plaintiff to treat the contract as at an end because breached by the defendants. This however is directly contrary to the provisions of subdivision 2, section 126 of the Sales Law (Pers. Prop. Law, Consol. Laws, chap. 41, added by Laws of 1911, chap. 571) which provides:

"Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one of more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to claim for compensation, but not to a right to treat the whole contract as broken."

The law thus expressly makes it a question of fact whether the failure of the defendants in this case to pay for the invoice of October thirtieth justified the plaintiff in refusing to proceed further with the contract, yet the learned judge below instructed the jury *as matter of law* that it did. Inasmuch as the facts involved in this instruction were not in dispute, it was equivalent to an instruction to the jury to find a verdict for the plaintiff.

In passing it may be remarked that the significance of defendants' refusal to pay for the invoice of October thirtieth as indicating an election on their part to accept plaintiff's repudiation of the contract as a breach thereof was not referred to at the trial.

Thus far I have discussed the questions involved as though the record stopped with the failure of defendants on or about November twenty-ninth to pay for the invoice of October thirtieth, but that is not the case. Plaintiff's repudiation of the contract, made originally on October thirtieth, was obstinately and persistently maintained, and all retraction deliberately refused both before defendants' failure to pay at the end of November and at all times, until defendants on Decem-

ber twenty-first formally accepted the repudiation. The plaintiff did, it is true, on November twenty-ninth write: " We have been shipping goods to you on your contract and *we now have one case packed and ready for shipment and have started another.* The case that is ready to be shipped will not go until we receive your check for the money that is due. If we do not receive your check we will not fill any more orders on your contract." 

It is quite plain that this skillfully worded letter contains no retraction of the repudiation of October thirtieth, and the absence of such retraction is rendered all the more striking when we recall the insistence of defendants that plaintiff must " positively agree in writing that you will complete our orders at exactly the prices and terms upon which you accepted them." Again, on December sixteenth, plaintiff wrote " unless payments are made immediately according to original agreement, *we will cancel existing orders* and sue for balance due." The same disingenuous suppression of any promise on the part of plaintiff to fill existing orders is to be found in this phraseology. And finally when, on December twentieth, plaintiff refused to indorse defendants' check of December eighteenth in the manner prescribed by defendants, upon condition that by such indorsement " they would agree that all our orders as per memo. sent to them (you) in our letter of December eleventh will be shipped to us," etc., plaintiff had only this to say: " We do not admit any right in you to attach conditions when you pay us money due for goods sold and delivered in accordance with orders received from you. When we delivered our goods to you at the agreed upon price and within the agreed upon time we then became entitled legally and morally to the payment of the agreed upon price."

Appellate Term, First Department, May, 1918.    [Vol. 103.

The correspondence leaves no doubt that plaintiff consistently and persistently maintained the position that having dishonorably repudiated the contract on October thirtieth it would hold to that repudiation, would play fast and loose with its obligations under the agreement as it chose, but would nevertheless insist on defendants' strict compliance with the letter of their obligation under the agreement. The morality of this attitude requires no comment. At law, however, it constituted a continuing breach of the agreement of which defendants were at liberty to avail, as they did, at any time during this continuance. See *Sperry & Hutchinson* v. *O'Neill-Adams Co.*, 185 Fed. Repr. 231, 238.

This last consideration disposes also of a point raised by the plaintiff on this appeal but not even suggested on the trial, namely, that in any event the defendants' acceptance of the invoice of 100 dozen hose (out of 4,000 covered by contract No. 8) on or about December second was an affirmative election to treat the agreement as still subsisting at that time. The most that could have been claimed for the plaintiff in this regard, I think, is that that question might have been submitted to the jury as a question of fact. But, in the first place, I have a serious doubt whether this waiver by defendants of plaintiff's breach is sufficiently pleaded in the reply to the counterclaim to warrant its consideration for any purpose. In the second place, since plaintiff never asserted such claim after the acceptance of this small invoice but did continuously thereafter maintain its repudiation of the agreement the incident became wholly immaterial and negligible.

Had the defendants moved for the direction of a verdict, I should advise that the judgment be reversed and such direction given. In default of that motion,

however, I am of opinion that we are limited to reversing the judgment and granting a new trial, with costs to the appellants to abide the event. *Baldwin & Co., Inc., v. Kohler,* 94 Misc. Rep. 142.

Finch and Mullan, JJ., concur.

Judgment reversed and new trial granted, with costs to appellants to abide event.