JAMES HADFIELD, Appellant, *v.* JOSEPH COLTER and THOMAS S. BERNIE, Doing Business under the Firm Name and Style of COLTER & BERNIE, Respondents.

First Department, July 3, 1919.

Sale — contract — anticipatory breach — election by other party to treat contract as terminated — refusal to accept breach — effect — evidence.

Where one party to an executory contract renounces it without cause, before the time for performing it has elapsed, he authorizes the other party to treat it as terminated, without prejudice to an action for damages;

and if the latter elects to treat the contract as terminated his right of action accrues at once. The latter, however, must elect whether he will treat the contract as terminated, or as still existing; and, if he does not do so, his right of action for a breach can only rest upon the refusal of the other party to perform the existing contract according to its terms.

By refusing to consent to an anticipatory breach the other party keeps the contract alive for the benefit of both parties, and either can take advantage of supervening events.

In an action to recover the reasonable value of merchandise evidence examined, and *held*, to show that the defendants were not merely trying to persuade the plaintiff to perform its contract but had elected to treat the same as continuing and insisted on its performance, and that the defendants after plaintiff had abandoned its attempt to be freed from the contract, breached the same themselves by refusing to make payment except on conditions not included therein.

APPEAL by the plaintiff, James Hadfield, from an order of the Appellate Term of the Supreme Court in favor of the defendants, entered in the office of the clerk of the City Court of the City of New York on the 3d day of May, 1918, reversing a judgment of said City Court, and also reversing the order of said City Court denying defendants' motion for a new trial.

The original City Court judgment was entered upon a verdict in plaintiff's favor.

*Lawrence E. Brown* of counsel [*Ferdinand E. M. Bullowa* with him on the brief; *Bullowa & Bullowa*, attorneys], for the appellant.

*Sumner B. Stiles*, for the respondents.

DOWLING, J.:

This action was brought to recover $1,259 as the agreed and reasonable value of certain merchandise, consisting of hosiery delivered to the defendants by the Hadfield Hosiery Company, the assignor of the plaintiff, on October 30 and October 31, 1916, as per the schedule annexed to the complaint.

The answer of the defendants in substance admitted the delivery of the said merchandise pursuant to a written order given by the defendants on July 19, 1916, for 4,000 dozen pairs of misses' black and white hose, at a base price of one dollar and five cents per dozen pairs of size seven, with an increase of five cents per dozen pairs on each size above seven,

and with a decrease of five cents per dozen pairs on each size below seven, to be delivered to the defendants at 72 Leonard street, New York, during the months of October, November and December, 1916, with a discount of three per cent if paid for in ten days, two per cent if paid for in thirty days, and a commission of four per cent additional irrespective of time for payment.

The answer, besides containing some partial defenses claiming deductions on account of the said discounts and said commission, also sets up two distinct counterclaims.

The first counterclaim sets forth the contract for the said 4,000 dozen of misses' hose to be delivered to the defendants by the Hadfield Hosiery Company during the said months of October, November and December, 1916, in pursuance of the said written order of the defendants given on said July 19 and the specifications furnished on September 15, 1916, at the said basic price of one dollar and five cents per dozen on size seven with the discounts and four per cent commission already indicated.

The said counterclaim further shows that the said company had delivered only 400 dozen pairs under the said contract before the said delivery on October thirtieth, of the goods mentioned in the complaint, and that the company had delivered in all only 1,668 dozen pairs out of the said total 4,000 dozen agreed to be delivered, and by a letter dated October 30, 1916, the said company repudiated its said agreement and refused to make any further deliveries thereunder; that by reason of the failure of the company to perform its contract, the defendants had been damaged in the sum of $1,109.21.

The second counterclaim alleges in substance that the said company by another written contract of September 15, 1916, agreed to deliver another 4,000 dozen pairs of misses' hose at a different basic price of one dollar and ten cents per dozen pairs of size seven, with an increase of five cents per dozen on sizes above seven, and a decrease of five cents per dozen on sizes below seven, with the same discounts and commission as in the former contract, and the goods were all to be delivered to the defendants in New York in December, 1916, and January, 1917, but prior to January 15, 1917, after the com-

pletion of other shipments which the company had already agreed to make to the defendants.

The said second counterclaim further shows that by the same letter dated October 30, 1916, the said company repudiated the said second contract and refused to carry out the terms thereof, and failed to make any delivery of any of the 4,000 dozen called for thereunder; that by reason of the failure of the company (the assignor of the plaintiff) to perform its said second contract, the defendants had been damaged in a sum largely in excess of the amount claimed in the complaint and the defendants, therefore, demanded judgment dismissing the complaint and for judgment on their counterclaims, in an amount sufficient to offset any recovery by the plaintiff as the assignee of the claim of the said company.

The reply of the plaintiff contains what is practically a denial of both counterclaims, save that he admits the letter of October 30, 1916, was sent to defendants. He further sets up matter in answer to said counterclaims wherein he avers that defendants had treated the said letter as inoperative and thereafter and prior to November 29, 1916, had received and accepted other goods shipped to them by plaintiff's assignor, and had paid for some of them, but had failed to pay for the goods in question, although the account was due and that defendants, thereby, had breached their agreements, whereupon they were notified that until payment was made no more merchandise would be shipped to them. It is alleged that defendants persisted in their refusal to pay the account then due and wrongfully demanded as a condition for making such payment, a guaranty to complete the contract; that defendants were notified that a refusal to pay their account then due would be treated as a repudiation of the agreements; and that when defendants failed to pay their indebtedness then due plaintiff's assignor elected to treat such failure to pay as a breach and repudiation of all agreements between the parties.

In discussing the evidence, plaintiff's assignor, the Hadfield Hosiery Company, a Pennsylvania corporation, will hereinafter be referred to as the plaintiff. The defendants are copartners. There were three contracts between the parties, but one known as No. 11 is not involved in any way in this

action.  Order No. 8 is set forth at length in the first counter-
claim and called for the delivery of 4,000 dozen pairs of hose
at a base price of $1.05 per dozen pairs of size No. 7; order No.
19 was for a similar amount at a base price of $1.10 per dozen,
deliveries to be made after the completion of shipments under
the first contract.  During the early part of October plaintiff
shipped certain goods on account of order No. 8 to defendants,
and on October thirtieth made the shipment in suit, aggregating
$1,259.  Including these goods plaintiff shipped in all 1,700
dozen pairs under order No. 8; none were shipped under order
No. 19.  On October thirtieth, when the shipment in question
was made, plaintiff wrote to defendants as follows:

*" October  30th,*  1916.

" COLTER & BERNIE,
        " New York City:
    " GENTLEMEN.— We are advised by our yarn man on
Saturday that they cannot fill any more of our low contracts
and therefore we are now compelled to give a very high
price for yarn and can no longer deliver our goods at a low
price.  We must have yarn and therefore are compelled to
pay the advance on yarn to fill our orders.
    " From November 1st all orders must be billed at $1.20 on
seven or we cannot fill the orders.  Tuesday will be the
last day for the low priced goods.
    " We are very sorry that the prices must be changed but
we cannot do anything in the matter and hope that our
customers will support us in the matter.
    " It will be impossible for us to fill the orders at the old
prices.  $1.20 is the very best and all our customers will have
to meet the $1.20 or we cannot meet the orders.
    " We will not work on any more of your orders until further
notice.                       Yours very truly,
                " THE HADFIELD HOSIERY CO."

    To this defendants replied:

*" October* 31, 1916.

" HADFIELD HOSIERY CO.:
    " DEAR SIRS.— Your amazing letter of October 30th, is to
hand wherein you say that you do not propose to ship us any
more goods at prices which you accepted the orders at.  We

wish to assure [you] that when you wrote us stating that you wished details for all the orders which you had and gave us a stated time to forward these to you we immediately gave you them not waiting for the date which you set. We would also state that we have always treated you in a most liberal way, and in view of the very serious consequences that will follow in the event that we do not ship our goods we must request that your Mr. Hadfield or Mr. Vetter call on us immediately and settle this matter.

" Yours very truly,<br>" COLTER & BERNIE."

On November first plaintiff replied, giving reasons why neither Vetter nor Hadfield could call at New York as requested, and continuing:

" We are very sorry to say but we cannot say anything else than the price for Misses Ribs must be $1.20 on account of the yarn situation. We have been delivering your goods as fast as we could turn them out and we feel that we are doing our best for you and will start to work on your orders again and push them out as quick as possible if you will be willing to pay $1.20.

" Kindly let us know by return mail because we have a customer who will give us orders to work on at once at $1.20 but we would like to give you the preference but we cannot do anything for you unless we get $1.20. Yarn is being cancelled left and right and it will only be within four weeks before the price will go $1.25 on seven.

" Yours very truly,<br>" THE HADFIELD HOSIERY CO."

The following day defendants replied:

" *November* 2, 1916.

" Hadfield Hosiery Co.:

" Dear Sirs.— Your letter of November 1 is to hand saying that you do not see your way clear to ship to us the childrens hose on the orders which you accepted from us at $1.02½, 1.05 and 1.10 less 7% in 10 days, unless we agreed to pay you $1.20. You added that you have a customer who offers you $1.20 for our goods. We answer that that has nothing

whatever to do with the case, and we respectfully inform you now that we insist upon you keeping your agreement, and delivering every dozen due us at the prices and terms of our orders.

" We sold the goods depending upon you doing the business honorably. Your threatened action is positively the worst example of crawling that we ever had in all our business experience. Our orders were accepted by you in March, May, July, August and September, and at the high prices prevailing in those months, and you assured us by letter on September 14th that you would complete our orders by January 15th. Besides, you told Mr. Bernie in your office on Thursday, October 26th, that our orders would all be completed by January 15th, without fail, and that we would get your entire production from November 15th on.

" Please understand our position clearly, namely, that you are under every moral and legal obligation to complete our orders as stated, and we if necessary shall use all proper methods to protect our rights.

" In closing, we think you surely do not want us to lay your correspondence and ours before Mr. Carter of the Hosiery Manufacturers Association of which you and we are members, and thereby expose to other manufacturers your actions towards us.          Yours very truly,

                                    " COLTER & BERNIE."

On the same day (November second) defendants wrote:

                                    "*November* 2, 1916.

" HADFIELD HOSIERY Co.:

" DEAR · SIRS.— We herewith enclose our check in payment of your invoices of October 24th, which fall due tomorrow. Please note that our attorney advises us that we must not send you any more money until you positively agree in writing that you will complete our orders at exactly the prices and terms upon which you accepted them.

                    " Yours very truly,

                                    " COLTER & BERNIE."

Interviews between the parties ensued, not varying the claims set forth in these letters or the position taken therein.

Then the following letter was sent;

" PHILADELPHIA, PA., *November 29th,* 1916.
" COLTER & BERNIE,
    " New York City:

" GENTLEMEN.— We received your check for the last two cases that we shipped and wish to thank you for the same.

" Your account amounting to $1,259.00 is due on Friday and we will expect a check by return mail for the full amount. We have been shipping goods to you on your contract and we now have one case packed and ready for shipment and have started another. The case that is ready to be shipped will not go until we receive your check for the money that is due. If we do not receive your check we will not fill any more orders on your contract."

To this defendants replied:

" *December* 1, 1916.

" HADFIELD HOSIERY Co.:

" DEAR SIRS.— Your letter of November 29th is to hand and we stand ready today to pay your bills when you give us your positive guarantee that you will complete your contract with us by delivering the hosiery on the orders which you accepted and agreed to fill. When Mr. Vedder and Mr. Had-field called on us about three weeks ago we then offered you our check on condition that you guarantee to deliver our goods. You voluntarily promised to write us an answer from Philadelphia the following day, but up to date we have not received this answer. Since then however, you shipped us two cases which materially strengthens our position and contention. When Mr. Bernie was in Philadelphia early last week he called on you but judging from what Mr. Hadfield said Mr. Vedder did not care to talk with him. This was not only unbusinesslike, but discourteous.

" You say the bills were due today, but we say they were due November 10, and we offered you our check for them when you were here November 9. The two bills you sent November 21st were paid November 28th. This proves two things con-clusively: First, That you had no fear about our credit, although we had in our hands some twelve hundred dollars, and second, that you are not justified in threatening not to fill the balance of the contract because you positively

know we are holding back the money awaiting your decision to complete the contract.

" Please take notice that the net amount of your bills is held ready for you at a moments notice in our bank when you give proof that you will perform your contract. Or further, as evidence of our good faith, we offer to deposit the net amount due in a New York or Philadelphia bank to be agreed upon, under the condition that the money shall be paid to you only on the completion of the contract.

" If this liberal offer is not satisfactory and you persist in holding back our shipments you will compel us to go out into the open market and procure the goods at today's price and charge the difference to your account.

" This is positively the only way we will settle this matter.
" Yours very truly,
" COLTER & BERNIE."

Thereafter defendants wrote to plaintiff:

" December 11, 1916.
" HADFIELD HOSIERY MILLS:
" DEAR SIRS.— We have gone over your account carefully, and enclose you an exact copy of the orders which are unfilled on our books for your account.

" You will notice that five of these orders were accepted by you at $1.02½ that is 1949 dozens. Seven of them were accepted by you at $1.05, the dozens of these totaling 7713, and also the remaining quantity of the $1.10 ordered which you accepted which is 3,300 dozens, making a grand total of 12962 dozens.

" You will note that on the outside column we have stated that we will pay $1.05 for all of the $1.02½¢ goods $1.10 for the $1.05 goods, these to be delivered as quickly as possible. We will also pay $1.15 for the balance due of the $1.10 goods. These, however, are not to be delivered until the low priced orders are completed, which we presume will be in March or April.

" We agree to pay you these advanced prices on condition that you leave $500 with us as a guarantee for the completion of the orders on this basis, and also that you send us a letter signed by the officers of your firm agreeing to these propositions.

" It is understood that we will pay you the $500 deposit on completion of all of these orders plus interest at the rate of 6% per annum.

" In regard to the money which we are holding for you we intend paying you interest from the time the original bill was due until we pay you the amount due, less the $500. We have gone over this matter thoroughly and the proposition mentioned in this letter is positively the only way we can settle this matter and it is entirely in your hands to say *yes* or *no*.                    Yours very truly,

" COLTER & BERNIE."

On December sixteenth plaintiff wrote:

" Answering your letter of the 11th inst., we say NO.

" Unless payments are made immediately according to original agreement we will cancel existing orders and sue for balance due."

On December eighteenth defendants wrote:

" We again offer you our check in payment of all bills which we owe you, subject to the conditions as mentioned on the face of the check which is the original agreement regarding the filling of these orders, and in accordance with your letter of December 16th.

·" You will note that we have included interest since the bill was due, as we have agreed to do when you accepted our check."

The check inclosed therewith was as follows:

" No. 2996                COLTER & BERNIE
                    " HOSIERY AGENTS
                    " 72 Leonard Street
                        " NEW YORK, *December* 18, 1916.

" Pay to the Order of Hadfield Hosiery Co., Philadelphia, Pa., Eleven Hundred and seventy-six and 22/100 $1176.22/100 Dollars —

" This check will be honored by our bank only on condition that John Hadfield president and David Vetter, treasurer of Hadfield Hosiery Co. endorse it and by so doing they agree that all of our orders as per memo sent to them in our letter

of December 11 will be shipped to us and billed to us at the original prices accepted namely $1.02½, 1.05 and 1.10 on or before March 15, 1917.          COLTER & BERNIE.
" To Columbia Bank, Broadway Branch,
     " 407 & 409 Broadway, New York."

To this plaintiff replied:

                                    " December 20th, 1916.
" COLTER & BERNIE,
          " 72 Leonard Street,
                    " New York City:
" GENTLEMEN.— We have deposited check received from you in part payment of bill past due.  By this we mean you have deducted discount amounting to $39.27 which you are not entitled to.  Kindly remit check for this balance.
" We do not admit any right in you to attach conditions when you pay us money due for goods sold and delivered in accordance with orders received from you.
" When we delivered our goods to you at the agreed upon price and within the agreed upon time we then became entitled legally and morally to the payment of the agreed upon price.
" By depositing your check we only admit that we have received part payment of the bill rendered to you.
                    " Yours very truly,
                         " THE HADFIELD HOSIERY CO."

The check was not paid, as it was not indorsed in the form required by defendants and it was thereupon protested for non-payment.

Thereupon the final letter passed between the parties:

                                    " December 21,6.
" THE HADFIELD HOSIERY CO.,
     " Kensington Ave. & Huntingdon St.,
                    " Philadelphia, Pa.:
" DEAR SIRS.— On December 18th we forwarded to you our check to your order, for $1,176.22, in payment of all bills bearing the following endorsement:
" This check will be honored by our bank only on condition that John Hadfield, President, and David Vetter, Treasurer of the Hadfield Hosiery Company endorse it, and by so doing, they agree that all of our orders, as per memo, sent to them

in our letter of December 11th, will be shipped to us and billed to us at the original prices, namely: $1.02½, $1.05, and $1.10 on or before March 15, 1917.'

" We have been today advised that this check was presented to our bank for payment endorsed with a rubber stamp, and that payment has been refused because of your failure to comply with the terms stated upon the face of the check.

" By letter dated October 30, 1916, you in effect advised us that you would make no further shipments to us unless we agreed to pay you prices largely in excess of the prices specified in our orders which were accepted by you, and that all shipments on and after November 1st would be billed at the price of $1.20 on size 7. Since receipt of this letter we have consistently insisted upon your performance of your agreements with us, but you have at all times refused to give us any assurance whatever that you were ready or willing to perform your contract obligations. In our letter of December 11th we went so far as to suggest, in the hope of adjusting the matter, that we would be willing to pay a substantial advance on the prices you were obligated to accept on condition that you would give us security for the completion of your contract, and we have at all times been ready, and have offered, to promptly pay the balance of the account upon receiving proper assurances of your willingness to complete your contract. Inasmuch as you have refused to recede from the position taken in your letter of October 30th, we must regard your action as a repudiation of your contracts with us.

" Owing to your repudiation and breach of your contracts with us we shall be compelled to hold you responsible for the damages resulting therefrom. Inasmuch as these damages will far exceed the amount due for goods which you have already delivered, we must refuse to make any further payments to you and will look to you for the payment of whatever damages we may suffer in excess of what is unpaid for goods already delivered.     Yours very truly,

" COLTER & BERNIE."

The learned trial court, in a very complete and instructive charge, submitted to the jury the disputed question of fact in the case, in the following form:

"*First,* did the plaintiff before default on the part of the defendants breach this contract, and while it is true that the plaintiff attempted on October 30th to breach that contract, nevertheless, the defendants refused to allow the contract to be breached, and asserted as late as its latest letter that its whole endeavor was to compel, through all of the period of the controversy, the plaintiff's assignor to live up to this contract and to perform. I have told you that if the defendants so acted they kept the contract alive, not alone for their own benefit but for the benefit of the plaintiff, and that if during the time the contract was alive, defendants defaulted with respect thereto, then the plaintiff's assignor was justified in refusing to make further deliveries and there can be no liability under these counterclaims. On the other hand, if it was the fault of the plaintiff's assignor, and before default on the part of the defendants the plaintiff's assignor breached the contract, and all that took place subsequent to the letter of October 30th was simply discussion, and not assertion of right, then the defendants will be entitled to offset any damage that they suffered by reason of the breach of the contract by the plaintiff's assignor."

No exception was taken to this charge.

The defendants' counsel at the close of the whole charge asked the court to charge that " although it is the law that in order to take advantage of an anticipatory breach of a contract the party suing must elect so to do; there is no particular time within which he must make that election." The court so charged, but added: " In connection therewith, if he does not elect to accept that breach of the contract, and he defaults in the meantime with respect to any provision thereof, the other side have a right to act upon his default;" to which modification defendants' counsel excepted. Further defendants' counsel made this request: " I ask your Honor to charge that an offer or repeated offer by the defendants in this case to allow the plaintiff to perform their contract is not necessary to be considered as an election by them, but must be viewed in the light of all the circumstances." The court: " I refuse to charge in the language requested, but I leave the proposition to the jury to determine the effect of these efforts as to whether or not the defendants were asserting

a right that the contract should be continued and was continued as far as they are concerned." To which exception was also taken by defendants' counsel.

The jury found a verdict in favor of plaintiff. This finding of the jury was fully warranted by the undisputed testimony in the case. In fact it might well be claimed that the court would have been justified in so finding as a matter of law. Conceding that the plaintiff's demand for a higher price for its goods than that contracted to be paid was entirely unjustifiable, yet his conduct amounted to no more than an anticipatory breach of the contract, and defendants never agreed to the proposed cancellation of the contract, nor did they ever accept or treat the threatened breach as operative. On the contrary, they refused to acquiesce in any abandonment of the contracts, accepted deliveries thereunder, and treated the contracts as existent and operative, and were themselves guilty of default and of repudiating the agreement when they failed to make payments as provided by the contract. The correspondence demonstrates that when plaintiff found it could not succeed in its effort to have defendants pay a higher price for the goods ordered on a mutual cancellation of the contracts then existent, it went ahead to perform and was never in default thereafter. Its threatened anticipatory breach never became an actuality. It was defendants who actually breached the contract.

Plaintiff's mere declaration of its proposed anticipatory breach of the contract was ineffective for any purpose, as defendants never accepted it.

The rule is thus stated by Judge WALLACE in *Marks* v. *Van Eeghen* (85 Fed. Rep. 853): "Where one party to an executory contract renounces it without cause, before the time for performing it has elapsed, he authorizes the other party to treat it as terminated, without prejudice to a right of action for damages; and, if the latter elects to treat the contract as terminated, his right of action accrues at once. The latter, however, must elect whether he will treat the contract as terminated, or as still existing; and, if he does not do so, his right of action for a breach can only rest upon the refusal of the other party to perform the existing contract according to its terms." (See, also, *Roehm* v. *Horst,* 178

U. S. 1; *Becker* v. *Seggie*, 139 App. Div. 468; Benj. Sales [6th ed.], 517.)

The record before us demonstrates that defendants not only never accepted the proposed abandonment of the contract, but expressly and repeatedly stated that they would hold plaintiff to its bargain and not permit it to crawl out therefrom. They demanded shipments under the contract and accepted and paid for deliveries made thereunder, all after the attempted cancellation. By refusing to consent to the proposed breach and by holding plaintiff to the contract, the defendants kept the contract alive for the benefit of both parties, and either could take advantage of supervening events. (*Rubber Trading Co.* v. *Manhattan Rubber Mfg. Co.*, 221 N. Y. 120.) It clearly appears that defendants themselves after plaintiff had abandoned its attempt to be freed from the contract, breached the contract by endeavoring to avoid payment as required thereby by attempting to annex conditions to their offered payment not justified under the contract and by finally tendering a check which required an indorsement importing new guaranties which they had no right to exact. They never paid the overdue account, and thereby they breached the contract and plaintiff was entitled to its recovery herein while defendants could take nothing under their counterclaims.

Not only is the verdict a proper one but we find no errors requiring reversal in the exception taken to the refusal to make the two requested charges. The main charge was an eminently fair and adequate presentation of the issue between the parties and the law applicable thereto.

The second request to charge was treated in a manner as favorable to defendants as they could hope to obtain, for the jury were given the right to determine the effect of the efforts to induce plaintiff to perform its contract, while the correspondence makes it clear that as a matter of law defendants were not merely trying to persuade plaintiff to perform, but had elected to treat the contract as continuing and insisting on its performance.

So the first request to charge was not erroneously modified, as the evidence establishes that defendants had elected not

to accept the tendered breach and this as a matter of law upon the undisputed evidence.

I conclude that the determination of the Appellate Term (103 Misc. Rep. 474) should be reversed, with costs, and the judgment of the City Court affirmed, with costs.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concurred.

Determination reversed, with costs, and judgment of the City Court affirmed, with costs.